## WENDELIN STOLL v. MARIE A. STOLL.[1]

January 28, 1955.

No. 36,491.

*C. U. Landrum* and *William W. Essling,* for appellant.
*Field, Arvesen & Donoho,* for respondent.

FRANK T. GALLAGHER, JUSTICE.

Appeal from an order of the district court which amended, modified, and changed a previous order and from a judgment.

The only question which we deem it necessary to consider under the record here is whether the trial court abused its discretion

[1]Reported in 68 N. W. (2d) 367.

in awarding custody of the two minor children of the parties to plaintiff.

The matter appealed from came on before the district court of Otter Tail county upon a motion by plaintiff for an order amending previous findings, conclusions, and orders of the court in his divorce action against defendant; awarding the complete care, custody, and control of the minor children of the parties to plaintiff under such terms as the court might deem reasonable and proper; and reducing maintenance and support money to be paid by plaintiff. The motion was heard on December 7, 1953, at which time all parties were given an opportunity to be heard and offer such evidence as they desired bearing upon the issues before the court. Both parties offered affidavits and documentary evidence at the hearing and were granted rights of cross-examination. At the time of the hearing on this motion, the trial court had before it not only the additional evidence then received but also the evidence received at the trial of the main action in February 1952, when the divorce action brought by plaintiff against defendant was tried. In that action the court entered findings of fact, conclusions of law, and order for judgment dated April 4, 1952, and filed the following day, in which it concluded that neither party was entitled to a divorce from the other but that defendant was entitled to live separate and apart from plaintiff. It awarded $175 per month for the separate maintenance and support of defendant and her minor children and awarded her custody of the children, with rights to plaintiff to visit the children at stated times, together with certain other rights to have custody of the older child during July in each year. Subsequent amendments to the findings, conclusions, and order for judgment of April 4, 1952, were made pursuant to motions and hearings by later orders of the court. One of these orders dated August 4, 1952, reduced the payments by plaintiff for separate maintenance to $75 per month. Another order dated February 16, 1953, awarded custody of the minor children to plaintiff from June 5 to September 1 each year, during which time the payments to defendant for maintenance were further reduced to $25 per month, but she was granted rights of visitation between those dates.

After the hearing of December 7, 1953, the court, under date of January 28, 1954, made further findings, conclusions, and order for judgment amending the previous ones. In those findings it stated, among other things, that, despite the fact that it had specifically found that plaintiff was not guilty of any act of indecency with his children and despite the fact that defendant had been advised by all the doctors that plaintiff was not guilty of such acts, defendant's fixed delusions as to indecent and sexual matters continue and that she continues to be impervious to logic and reason. The findings further stated that this symptom of paranoia on the part of defendant was becoming more marked as time went on and is a form of mental illness; that the illness from which defendant is suffering has strongly influenced her mental attitude and her actions toward the training of her children, particularly where the children's father is concerned; and that as a result defendant has continuously suggested to and impressed upon the minds of these children of tender years indecent and sexual matters and an antipathy toward their father which has created an unwholesome atmosphere for the children. The findings go on to state that the evidence is clear that the older child was only three years of age when this fixed delusion on the part of defendant commenced and that even after a lapse of over two years, during which time the father either did not see the children at all or was prevented from effectively visiting the children, they would have these indecent and sexual matters upon their minds and would repeat them to third persons and were trained to run and hide under the bed when their father came to visit them or refused to go with their father when reasonable efforts were made to have them so do. The findings then stated that after the original decision of the trial court on April 4, 1952, plaintiff was unable to enjoy his rights of visitation with his children, as provided in the orders of the court, because of the actions of defendant in training and schooling the children to run and hide or refuse to come for visitations and other actions which the children obviously would not have done of their own volition. After reciting other incidents arising out of this unhappy relationship, the court found:

"* * * It is obvious to the Court that the defendant has renewed with vigor her attempts in exposing the minds of the children to her fixed delusion as to indecent and sexual matters, and that the situation is becoming worse, with the result that defendant's mental illness is making an indelible impression upon the minds, actions, and character of the children, and it has become imperative that the children be removed from that atmosphere and that a permanent change be made in the custody, care and control of the children."

The court then revoked the original finding of fact relating to defendant's fitness to have the custody of the children and found from all the evidence before it that defendant is not a fit and proper person to have the care, custody, and control of the minor children. It confirmed its original finding that plaintiff is a fit and proper person to have the care and custody of the minor children of the parties and is able to provide a home for them with his sister in Minneapolis. It further found that the original finding relating to support and maintenance, as amended, should be amended to reduce the monthly payments to defendant from $75 a month to $40 a month at such time as the care, custody, and control of the minor children is changed from defendant to plaintiff.

The original conclusions of law, as amended, were further amended to provide that as such time as the care, custody, and control of the minor children is changed from defendant to plaintiff, in accordance with the amended findings and conclusions, the payments to defendant for the maintenance and support of herself and the two minor children are to be reduced to $40 a month, which sums are to be paid to defendant subject to further order of the court. The conclusions were also amended to award plaintiff the care, custody, and control of the minor children with the right of visitation to defendant once in each two weeks. A stay of proceedings was granted for a period of 30 days, with the provision that, in the event defendant perfected an appeal to this court within such time, such stay would be continued until the matter was disposed of by this court. Defendant appealed within the stay period, and the children are still in her custody awaiting this decision.

It is apparent from an examination of the entire record that the case has been an exceedingly difficult one for the trial court and for all others concerned. In a memorandum made a part of the findings, conclusions, and order of January 28, 1954, the court said:

"* * * As reflected in the original decision, the Court then had hopes that the parties might effect a reconciliation and that the defendant might rid her mind of the paranoia from which she is suffering, and the Court was then reluctant to remove these children of tender years from the custody of their mother. The Court again hesitated, upon a previous motion, to make a complete change of the custody of the children. Only after the matter had progressed to a point that the Court is clearly and firmly convinced that the welfare of the children demands a complete change in custody, has the Court arrived at the conclusions reflected in the foregoing Amended Findings, Conclusions, and Orders.

"The strain upon all of these lives resulting from the defendant's false accusations and fixed delusion has been severe, and is beginning to make itself felt in the formulating of the mental attitude and character of these children. Despite the anxiety and stress of the now almost four years of most difficult situations, the plaintiff father has at all times conducted himself as a gentleman, has obeyed the orders of the Court, and has the best interests and welfare of his children at heart.

"While this Court, as well as others, has always been very slow and reluctant to take the custody of children from their mother, this Court has now been convinced that it is necessary that it be done here, and that the future welfare and care of these children require it."

We have carefully considered the various assignments of error raised by defendant on appeal. It is our opinion that the findings of fact and conclusions of law as summarized in the judgment are supported by the evidence and that the only issue before us is whether the trial court abused its discretion in awarding the custody of the two minor children to plaintiff.

■ We are satisfied from our examination of the record that the trial court has been exceedingly patient and sincere in its efforts to decide this case in a manner which would be best for the welfare of the children. While it is elementary under our decisions that children of tender age should be left in the custody of their mother in most cases, it is apparent under the facts and circumstances here that there was no abuse of discretion on the part of the trial court in changing their custody to the father. The trial court, in an action for divorce, even after denying a divorce, retains jurisdiction in the same action, under general and equitable powers, to make provision for the care, custody, and control of the minor children where the persons are in fact living apart from each other. Atwood v. Atwood, 229 Minn. 333, 39 N. W. (2d) 103. While normally the custodial preference of small children is for the mother, the important and primary consideration is always the welfare of the child. Molto v. Molto, 242 Minn. 112, 64 N. W. (2d) 154. The trial court in this case had an opportunity for several years, in the various court hearings, to see the parties involved and their witnesses, to hear their testimony, observe their actions, and weigh the evidence in the light of all those observations and factors. In the absence of a clear abuse of discretion, which we do not find here, the action of the trial court must be affirmed. Aske v. Aske, 233 Minn. 540, 47 N. W. (2d) 417; Wicklem v. Wicklem, 229 Minn. 478, 40 N. W. (2d) 69; Christianson v. Christianson, 217 Minn. 561, 15 N. W. (2d) 24; Novotny v. Novotny, 152 Minn. 420, 189 N. W. 258.

■ Upon an application for alteration of a divorce decree to change the custody of minor children, the parties are entitled as a matter of right to a hearing in which witnesses may be cross-examined if there has been no waiver of such a hearing. It is also apparent from the record that the right to a hearing, with the right of cross-examination, was fully granted by the trial court and that there is no reversible error in that respect.

We are satisfied that every effort has been made by the trial court to delay any hasty procedure or judgment in this matter, always with the thought and hope in mind that time would correct the men-

tal attitude and feelings of defendant so that this once happy family again might be united and be together. From the record before us it is apparent that the time for such a happy ending has not yet arrived. For example, when defendant was questioned on cross-examination, after hearing testimony of doctors engaged in the field of psychiatry and neurology to the effect that the accusation she was making against her husband was highly improbable and difficult to believe, she still said that she had the idea and belief in her mind that he was guilty and that nothing could be done or said that she knew of which would erase the idea. Her definiteness is best summarized in the following question and answer:

"Q. As far as you're concerned, this idea and belief is firmly fixed in your mind, and as you see it now, will always be there; is that right?

"A. Yes."

It is our opinion that the trial court should be affirmed.
Affirmed.