In re the Matter of Patricia Lynn **SHARP, Appellant,**

v.

**Terry Lee BILBRO, Respondent.**

No. C6–00–38.

Court of Appeals of Minnesota.

July 18, 2000.

Review Denied Sept. 26, 2000.

Tammy Lynn Merkins, Westrick & McDowall–Nix, P.L.L.P., St. Paul, for appellant.

Kathryn A. Engman, Nordaune & Friesen, St. Louis Park, for respondent.

Candace Joy Barr, Niemi & Barr, Minneapolis, Guardian ad Litem.

Considered and decided by TOUSSAINT, Chief Judge, PETERSON, Judge, and HUSPENI, Judge.

## OPINION

DORIS O. HUSPENI, Judge.[*]

Appellant Patricia Sharp was granted physical custody of the parties' child in a stipulated paternity judgment. Later, respondent Terry Bilbro sought custody and sanctions, alleging Sharp interfered with his visitation and falsely claimed he had abused the child. The district court granted both of Bilbro's requests. Sharp appeals, alleging the record does not support modifying custody or the award to Bilbro of attorney fees. Because our review of the record discloses support both for the modification of custody and award of attorney fees, we affirm.

## FACTS

A stipulated order adjudicated Bilbro to be the father of Sharp's child and granted Sharp custody, subject to visitation by Bilbro. Subsequently, Bilbro sought, among other things, custody of the child and sanctions against Sharp. The evidentiary hearing on Bilbro's motion occurred over an 11–month period, during which the district court granted Bilbro physical custody pending final resolution of the dispute. Ultimately, the district court granted Bilbro sole legal and physical custody of the child and awarded $10,000 in attorney fees against Sharp. The parties' acrimonious relationship has produced, in addition to this paternity proceeding, various harassment, domestic abuse, and criminal proceedings, including a criminal proceeding in which Sharp pleaded guilty to making false allegations of abuse.

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to

## ANALYSIS

### I.

Sharp challenges the award to Bilbro of physical custody during the hearing. After an initial paternity determination, subsequent custody-related motions are determined under Minn.Stat. § 257.541 (1998). Minn.Stat. § 257.66, subd. 3 (Supp.1999). Under Minnesota law, where a recognition of paternity has not been executed, a father may seek custody under Minn.Stat. § 518.156 (1998). Minn.Stat. § 257.541, subd. 2(b). Here, because a recognition of paternity was not executed, a proceeding under Minn.Stat. § 518.156 was proper. Under Minn.Stat. § 518.156, subd. 1(a)(2), a parent may seek custody by filing a custody petition. In custody proceedings, the district court may award temporary custody pending a final disposition of the question. Minn.Stat. § 518.131, subd. 1(a) (1998). Here, because the district court initially granted Bilbro custody pending resolution of his motion for custody, that grant was a temporary one.

■ Because the district court ultimately granted Bilbro permanent custody, it is unclear how this court can grant Sharp relief from the temporary order. Generally, if an appellate court cannot grant relief, the relevant part of the appeal is moot. *See, e.g., In re Inspection of Minnesota Auto Specialties, Inc.,* 346 N.W.2d 657, 658 (Minn.1984) (stating if, during appeal, event occurs making decision on merits unnecessary or award of effective relief impossible, appeal "will be dismissed as moot"). An exception to this general rule applies if the issue is capable of repetition yet evading review. *In re Schmidt,* 443 N.W.2d 824, 826 (Minn.1989). Here, the reasons for the district court's grant of temporary custody were based on the facts and circumstances of *this case.* Therefore, the grant of temporary custody to Bilbro does not present an issue fitting the exception to the general rule regarding moot-

Minn. Const. art. VI, § 10.

ness, and we decline to address the issue of temporary custody.[1]

## II.

■ Regarding the final custody determination, we will not reverse a district court's custody-modification ruling absent an abuse of discretion. *Frauenshuh v. Giese*, 599 N.W.2d 153, 156 (Minn.1999). On appeal, we view the record in the light most favorable to the district court's findings. *Id.* Generally, custody may be modified if the moving party shows, among other things, substantially changed circumstances and that a child's current environment endangers the child. *See* Minn.Stat. § 518.18(d) (1998) (listing requirements for custody modification). A denial or interference with visitation is not controlling in a custody-modification proceeding, but such events are to be considered along with the custody-modification standard set out in Minn.Stat. § 518.18 (1998) and associated caselaw. *Grein v. Grein*, 364 N.W.2d 383, 386 (Minn.1985); *see* Minn. Stat. § 518.175, subd. 6(e) (1998) (stating proof of unwarranted denial of or interference with visitation "may be sufficient cause for reversal of custody"). Here, Sharp alleges Bilbro showed neither changed circumstances nor endangerment.

■ What constitutes changed circumstances for custody-modification purposes is "determined on a case-by-case basis." *Lilleboe v. Lilleboe*, 453 N.W.2d 721, 723 (Minn.App.1990) (citations omitted). Sharp alleges that Bilbro has not shown changed circumstances because she interfered with Bilbro's visitation before he stipulated to placing physical custody with her. *Cf. Roehrdanz v. Roehrdanz*, 438 N.W.2d 687, 690 (Minn.App.1989) (stating "[t]he change of circumstances must be a real change and not a continuation of ongoing problems"), *review denied* (Minn. June 21, 1989). Sharp's argument is disingenuous, and we decline to endorse a position

that would encourage custodial parents to interfere or to continue to interfere with visitation in an attempt to prevail in a later custody dispute.

■ The existence of endangerment must be determined "on the particular facts of each case." *Lilleboe*, 453 N.W.2d at 724. While "[t]he concept of 'endangerment' is unusually imprecise[,] * * * in the context of child custody, the legislature likely intended to demand a showing of a significant degree of danger." *Ross v. Ross*, 477 N.W.2d 753, 756 (Minn.App. 1991). Sharp alleges Bilbro failed to show "any endangerment—much less the high level of endangerment mandated by the legislature[.]" We disagree. Sharp's own psychological expert testified that (a) if aspects of Sharp's conduct are as alleged in this file, "[she] *will* cause emotional psychological damage to her child" (emphasis added); (b) if Sharp did not undergo the therapy the expert suggested, "based on her past history and based on the diagnostic workup I did, [Sharp] would pose emotional damage to her child"; (c) Sharp's perceptions of reality may interfere with her ability to parent, and, without treatment, Sharp may lack the ability to "check" her behavior; (d) Sharp's personality disorder was something the expert "clearly [was] not trying to say [was] a lightweight problem"; (e) his analysis of Sharp was based on his assumption that Sharp did not falsify her reports of abuse, and that if she did, in fact, falsify those reports, it would strengthen the concern he had about the severity of her personality disorder; (f) if Sharp falsified abuse reports and subjected the child to intrusive exams, he would have concern about the child's safety; and (g) the subjecting of the child to unnecessary, sexual-abuse exams "would certainly" be a threat to the child. Viewing this testimony in the light most favorable to the district court's findings

---

1. Because we decline to address the issue of temporary custody on the grounds that we cannot grant effective relief, we do not address the question of whether a temporary

custody order is, in fact, appealable. *See Rigwald v. Rigwald*, 423 N.W.2d 701, 705 (Minn. App.1988) (referring to "unappealable temporary relief orders").

that leaving custody with Sharp would endanger the child, and noting that the child has undergone not one, but two, abuse-related physical examinations, we conclude that the record supports the district court's finding of endangerment. *See* Minn. R. Civ. P. 52.01 (stating findings of fact will not be altered unless clearly erroneous).

## III.

■ Minnesota law allows the award of "reasonable attorney's fees and costs" against a party who is found to have "wrongfully failed to comply with a visitation order" but does not articulate a standard for awarding those fees. Minn.Stat. § 518.175, subd. 6(c)(3) (1998). This district court awarded Bilbro attorney fees under this provision by functionally applying the standard for conduct-based attorney fee awards under Minn.Stat. § 518.14, subd. 1 (1998). Use of that standard is consistent with the language in Minn.Stat. § 518.14, subd. 1, which provides that the statute is applicable "at any point * * * including a [custody] modification proceeding under [Minn.Stat. § ] 518.18." Thus, while Minn.Stat. § 518.175, subd. 6(c)(3), states fees may be recovered, we hold that the standard for evaluating such a request is that used for evaluating requests for conduct-based attorney fees under Minn. Stat. § 518.14 (1998) and associated case-law. *Cf.* Minn.Stat. § 518.64, subd. 2(g) (Supp.1999) (explicitly adopting Minn.Stat. § 518.14 standard to govern attorney fees awards in proceedings to modify maintenance and support).

■ Conduct-based fee awards are discretionary with the district court. *Kronick v. Kronick*, 482 N.W.2d 533, 536 (Minn.App.1992). We reject Sharp's argument that the fee award is an abuse of discretion because she lacks the ability to pay it and because there is a significant disparity in the parties' incomes. Conduct-based fee awards may be awarded regardless of a party's ability to pay the award. *See Dabrowski v. Dabrowski*, 477

N.W.2d 761, 766 (Minn.App.1991) (stating conduct-based fee awards under Minn. Stat. § 518.14 may be made "regardless of the relative financial resources of the parties"). Sharp also alleges that the fee award could only be based on "things that are part of the court proceedings." We disagree. The statute allows fees to be awarded if a party has "wrongfully failed to comply with a visitation order[.]" Minn. Stat. § 518.175, subd. 6(c). Failure to comply with a visitation order is not something that occurs *as part of* court proceedings. Also, we cannot say that Bilbro's allegedly "unorthodox" manner of presenting his case precludes him from recovering fees. The multiple presentations of some of Bilbro's witnesses would have been unnecessary if the evidentiary hearing had not been spread out over 11 months due to, among other things, intervening abuse investigations and other delays attributable (directly or indirectly) to Sharp.

■ Lastly, Sharp alleges the district court failed to consider mitigating circumstances when awarding attorney fees. Again, we disagree. The district court issued a 28–page order after a five-day hearing and was well informed regarding these proceedings and parties. To the extent Sharp alleges the district court failed to consider the fact that she let Bilbro make up missed visitations, she ignores the fact that those visitations would not have been missed if she had abided by the visitation schedule. Sharp also notes that Bilbro was deprived of visitation by the conduct of the guardian ad litem. These circumstances, however, do not address the fact that Sharp pleaded guilty to making a false allegation of abuse. Nor do they justify what the district court found to be Sharp's bad-faith conduct in making other allegations of abuse and trying to subvert the father-child relationship. Given the extreme nature of Sharp's conduct and the breadth of the district court's discretion in awarding conduct-based attorney fees, we cannot say that, on this rec-

ord, the district court's fee award is an abuse of its broad discretion.

## DECISION

Because this court cannot grant Sharp effective relief from the district court's grant of temporary custody, we decline to address that grant. We affirm the merits of the district court's custody-modification ruling because the record supports the district court's modification of custody. We also affirm the district court's award to Bilbro, under Minn.Stat. § 518.175, subd.

6(c)(3) (1998), of attorney fees because the award comports with the standard for awarding conduct-based attorney fees set out in Minn.Stat. § 518.14, subd. 1 (1998), and associated caselaw.

**Affirmed.**