**In re the Marriage of Michael J. LEMCKE, Petitioner, Respondent,**

v.

**Dayna P. LEMCKE, Appellant.**

No. C0–00–1170.

Court of Appeals of Minnesota.

April 3, 2001.

J. Richard Stermer, Prindle, Maland, Sellner, Stennes & Knutsen, Ch., Montevideo, MN, (for respondent).

William E. Mullin, Melissa M. Weldon, Maslon, Edelman, Borman & Brand, LLP, Minneapolis, MN, (for appellant).

Considered and decided by LANSING, Presiding Judge, ANDERSON, Judge, and HALBROOKS, Judge.

## OPINION

LANSING, Judge

Dayna Lemcke appeals from a dissolution judgment providing that Michael Lemcke have sole physical custody of Dylan, the Lemckes' four-year-old son. Dayna Lemcke claims that, as a matter of law, the district court abused its discretion in allowing Michael Lemcke to have sole physical custody notwithstanding its finding that he had initially attempted to alienate Dylan from her and her extended family. Because in determining that Michael

Lemcke would have sole physical custody the district court properly weighed all the relevant statutory factors, including Michael Lemcke's attempt to alienate Dylan from his mother, we affirm.

## FACTS

Dayna Lemcke and Michael Lemcke were married in 1985. Their son Dylan was born in February 1996. When the Lemckes separated in June 1999, Dayna Lemcke moved out of the home and agreed to leave Dylan with his father. The Lemckes worked out an interim shared-custody arrangement whereby Dylan spent alternating weeks with each parent. Kelly Lemcke, Michael Lemcke's daughter from a previous marriage, and Jacie Foss, Dayna Lemcke's niece, also stayed with Michael Lemcke. Kelly and Jacie, now 18 and 17 years old respectively, lived with the Lemckes throughout their 14–year marriage.

After the Lemckes separated, Michael Lemcke told Kelly and Jacie that Dayna Lemcke did not want to be married to him anymore. He also stated that Dayna Lemcke wanted "the party life" and would not be able to provide the structure and stability the girls needed. In Dylan's presence, Michael Lemcke said Dylan would not get the attention he needed if he lived with his mother. Also in Dylan's presence, Michael Lemcke talked to Dylan's daycare provider about the Lemckes' marital problems. But the daycare provider testified she could not recall Michael Lemcke making any negative or derogatory comments about Dayna Lemcke. She also stated she had not seen Michael Lemcke interfere with Dylan's relationship with his mother.

The breakup of the family was difficult for Dylan and the girls. Dayna Lemcke testified that after the Lemckes separated, Dylan became estranged and had difficulty showing affection for her in his father's presence. She also testified that Dylan had stated he did not like her, Jacie, or his maternal grandmother. Dylan claimed that his father and Kelly had told him to feel that way. Dayna Lemcke added that Michael Lemcke had been rigid about Dylan's schedule and had twice refused to let Dylan stay with her when he was unable to care for him, opting instead to leave him with a babysitter. Michael Lemcke denied trying to alienate Dylan from his mother and her family and noted that Dylan had expressed negative feelings about them before the separation too. Both parents noted that Dylan was now doing better and was adjusting to his new circumstances.

The court-ordered custody evaluation resulted in a recommendation that the Lemckes share legal custody of Dylan and that Michael Lemcke receive sole physical custody. The evaluator based her recommendation on a finding that although both parents loved Dylan and were capable of providing the care he needed, Michael Lemcke had a uniquely intimate bond with the child and appeared to be more settled and more focused on Dylan's need for stability. The evaluator found that Dylan would be negatively affected if the bond with his father were disrupted. In arriving at her recommendation, she relied on interviews with both parents and on outside references. The father's 13 references were positive. Of the mother's five references, two were positive, two opted not to fill out the evaluator's questionnaire, and one noted that Michael Lemcke was better suited to be Dylan's primary caregiver. Because of Dylan's young age, the evaluator did not consider his wish to continue living with his father.

A psychologist Dayna Lemcke hired to evaluate Dylan concluded that Dylan loved both parents and was equally bonded to them. He also concluded that both parents loved Dylan and were likely to do whatever was necessary to encourage each other's relationship with him. In response

to Dayna Lemcke's claim that Dylan did not seem happy to see her when his father was around, the psychologist offered a number of plausible explanations, none of which included the father's alleged efforts to alienate Dylan's affection for his mother. He suggested, for example, that Dylan might be unhappy about having to end an enjoyable activity because of the custody exchange. Michael Lemcke did not participate in the evaluation because he was not told about it.

After weighing the evidence in light of the relevant statutory factors, the district court placed sole physical custody with Michael Lemcke. The court premised its decision primarily on a finding that Dylan had a uniquely close emotional relationship with his father and that upsetting that relationship would be detrimental to him. The court also found that although Michael Lemcke had initially tried to alienate Dylan's affection from his mother and her family, he now appeared able to put aside his anger and encourage a positive relationship between Dylan and his mother.

Dayna Lemcke moved for amended or more particularized findings and, alternatively, for a new trial. The court amended its findings, but it denied Dayna Lemcke's new-trial motion. In its amended findings, the court clarified that in finding that Dylan was more bonded with his father, it had relied on the custody evaluator's testimony, which was corroborated by Dylan's godmother and his daycare provider. Both testified that Dylan and Michael Lemcke shared a positive bond and that Dylan would be more comfortable with his father. The court also noted that its finding that Michael Lemcke was now able to encourage a healthy relationship between Dylan and his mother was based on Michael Lemcke's behavior, his recognition that any interference with Dylan's relationship with his mother would negatively impact Dylan, and his willingness to share custody during the pendency of these proceedings.

This appeal followed the court's amended findings and its denial of Dayna Lemcke's new-trial motion.

## ISSUE

Does the district court's finding that Michael Lemcke initially attempted to alienate Dylan's affection from his mother and her extended family preclude Michael Lemcke's sole physical custody of Dylan as a matter of law?

## ANALYSIS

 The district court has broad discretion in determining custody. *Rutten v. Rutten*, 347 N.W.2d 47, 50 (Minn.1984). When reviewing custody decisions, this court's role is limited to determining whether the district court abused its discretion by making findings unsupported by the evidence or by improperly applying the law. *Pikula v. Pikula*, 374 N.W.2d 705, 710 (Minn.1985).

 In light of the district court's finding that Michael Lemcke initially attempted to alienate Dylan's affection from his mother, Dayna Lemcke argues the district court abused its discretion as a matter of law by placing sole physical custody with Michael Lemcke based on the strength of the father-child bond. More specifically, she argues that because the father-child bond is the product of Michael Lemcke's efforts to alienate Dylan from her, the court abused its discretion in premising its custody decision on that bond. Whether a finding of alienation of affection precludes custodial placement with the offending parent as a matter of law is a question of first impression in Minnesota.

A majority of courts, including Minnesota courts, agrees that a sustained course of conduct by one parent designed to diminish a child's relationship with the other parent is unacceptable and may be grounds for denying or modifying custody.

*See, e.g., Henrikson v. Henrikson,* 288 Minn. 532, 532–33, 179 N.W.2d 284, 285 (1970) (course of conduct including interference with visitation and designed to alienate children from father's affection justified custody modification); *Begins v. Begins,* 168 Vt. 298, 721 A.2d 469, 472 (1998) (reversal of custody determination justified when mother had been primary caretaker and evidence showed that father had encouraged sons' hostility toward mother, corroded their relationship with her, and had demonstrated no capacity to place the children's interests above his own). *See generally* Annotation, *Alienation of Child's Affections as Affecting Custody Award,* 32 A.L.R.2d 1005 (1953).

But the paramount consideration in any custody decision is the best interests of the child. Minn.Stat. § 518.17 (1998). In determining a child's best interests, Minnesota courts are statutorily required to consider a variety of factors, including "the disposition of each parent to encourage and permit frequent and continuing contact by the other parent with the child." Minn.Stat. § 518.17, subd. 1(a)(13). The legislature has expressly stated that no single factor is determinative. Minn.Stat. § 518.17, subd. 1(a) ("The court may not use one factor to the exclusion of all others.") Instead, the court must weigh all statutory factors in the balance.

■ In support of her position that a finding of alienation automatically precludes Dylan's custodial placement with Michael Lemcke as a matter of law, Dayna Lemcke first argues that because interference with the parent-child relationship justifies a change of custody under Minnesota law, it *a fortiori* precludes an initial custody placement with the offending parent. She further argues that an offending parent must not be rewarded with custody. We disagree. First, the paramount consideration in all custody decisions is the child's best interests, not the parents' con-

duct. Minn.Stat. § 518.17, subd. 1. Children are not responsible for their parents' misconduct, and their best interests should not be sacrificed merely to punish a misguided parent. *See, e.g., Nickerson v. Nickerson,* 158 Vt. 85, 605 A.2d 1331, 1334 (1992) (focus should be on children's needs rather than parents' actions). This is not to say, of course, that a child's best interests are not furthered by nurturing a healthy relationship with both parents and that a sustained course of conduct by one parent designed to undermine the child's relationship with the other parent does not cast serious doubt on the offending parent's fitness to have custody and may not, on occasion, justify a denial of custody.

■ Second, evidence of alienation of affection does not automatically justify a change of custody. Under Minnesota law, proof of unwarranted denial of or interference with established visitation rights *"may* be sufficient cause for reversal of custody." Minn.Stat. § 518.175, subd. 6(e) (1998) (emphasis added); *see also* Minn.Stat. § 518.18(c) (1998) (allowing motion to modify custody earlier than one year after date of entry of decree of dissolution containing custody provision, on finding of "persistent and willful denial or interference with visitation"). This court has also stated that "[a] denial or interference with visitation is not controlling in a custody-modification proceeding," even though it must be considered along with the factors in Minn.Stat. § 518.18 (1998). *Sharp v. Bilbro,* 614 N.W.2d 260, 263 (Minn.App. 2000).

The cases on which Dayna Lemcke relies for the proposition that evidence of alienation precludes custodial placement with the offending parent as a matter of law are distinguishable. In *Henrikson,* for example, the court modified custody on a finding that the mother's interference with the father's right to communicate and visit with his children was purposeful and de-

structive of the father-child relationship. 288 Minn. at 532–33, 179 N.W.2d at 285. But the district court made no finding, and the record contains no evidence, that Michael Lemcke deliberately interfered with Dayna Lemcke's right to visit and communicate with Dylan or that his conduct was destructive of the mother-child relationship. Similarly in *Stoll v. Stoll*, 243 Minn. 510, 68 N.W.2d 367 (1955), the court transferred custody to the father on a finding that the mother had become delusional about the father's desire to perform indecent acts with the children and had attempted to impress those thoughts on the children. 243 Minn. at 512, 515, 68 N.W.2d at 369, 371. There is no finding remotely similar in this case. Finally, in *Sharp*, the court modified custody based on evidence that the mother had falsified reports of sexual abuse and subjected the children to unnecessary sexual-abuse exams. 614 N.W.2d at 263. But, again, this record contains no similar finding or evidence to support such a finding.

The foreign cases on which Dayna Lemcke relies similarly do not support her position that in custody cases involving allegations of alienation of affection, courts may not consider the child's bond to the offending parent or the child's preference for the offending parent. In *Begins*, for example, the court recognized that the ability and disposition of each parent to foster a positive relation with the other parent is "[a] critical statutory factor guiding the court's [best-interests] determination." 721 A.2d at 471. But the court also recognized that "[o]ther statutory factors, including of course the child's relationship with the primary care provider, must be weighed in the balance, and may in certain cases be decisive." *Id.* at 471–72. And in holding that an award of custody to the father was unacceptable, the court considered not only the father's "constant poisoning" of the children's relationship with their mother and its detrimental effect on

that relationship, but also the mother's primary-caretaker role before the separation and the fact that "every other consideration rendered mother the more suitable custodian." *Id.* at 473. *Begins* does not, therefore, support the proposition that in custody matters, evidence of alienation of affection is determinative. *See also In re Marriage of Will*, 489 N.W.2d 394, 399 (Iowa 1992) (considering parent's attempt to alienate child from other parent "a significant factor" in custody determination); *Fletcher v. Fletcher*, 229 Mich.App. 19, 581 N.W.2d 11, 14 (1998) (stating court properly weighed evidence that children were more affectionate toward their mother against evidence that mother discouraged children from showing affection toward their father); *O'Connor v. O'Connor*, 146 A.D.2d 909, 536 N.Y.S.2d 903, 905 (1989) (holding children's stated preference to live with their father is "not to be considered *determinative*" when evidence supports finding that father was primarily responsible for attempting to alienate children from their mother) (emphasis added).

■ In arriving at its custody determination, the district court did not consider Dylan's stated preference and, properly, did not rely exclusively on the father-child bond, even though it considered it. *See Nehra v. Uhlar*, 43 N.Y.2d 242, 401 N.Y.S.2d 168, 372 N.E.2d 4, 7 (1977) ("The desires of young children, capable of distortive manipulation by a bitter, or perhaps even well-meaning, parent, do not always reflect the long-term best interest of the children."). Admittedly, the court found that Michael Lemcke had initially attempted to undermine Dylan's relationship with his mother. But it also found that he was able to put aside his anger toward Dayna Lemcke and do what was necessary to encourage Dylan's relationship with his mother. The testimony of the custody evaluator, the psychologist Dayna Lemcke hired, Dylan's daycare provider, and Michael Lemcke himself supports the court's finding.

 More important, the record contains no evidence that Michael Lemcke's conduct was designed to alienate Dylan from his mother. *Cf. Henrikson,* 288 Minn. at 532–33, 179 N.W.2d at 285 (mother's interference with father's right to communicate and visit with his children was purposeful and destructive of the father-child relationship); *Stoll,* 243 Minn. at 512, 68 N.W.2d at 369 (mother was delusional about father's desire to perform indecent acts with the children and had attempted to impress those thoughts on the children). Similarly, the record contains no evidence that Michael Lemcke's initial conduct actually alienated Dylan from his mother. Both the custody evaluator and Dayna Lemcke's retained psychologist observed that Dylan interacted well with both parents and was equally bonded to them. Dylan's seeming alienation from his mother was more likely the result of the separation and the almost-inevitable ill feelings that follow it, feelings that frequently throw off balance, at least initially, the child's affection for each parent. An allegation unsupported by evidence of wrongful intent or detriment to the child should not affect custody rights. *Cf. Sharp,* 614 N.W.2d at 263 (evidence that mother falsified reports of sexual abuse and subjected the children to unnecessary sexual-abuse exams justified custody modification).

## DECISION

The district court did not abuse its discretion in providing that Michael Lemcke have sole physical custody of Dylan, notwithstanding its finding that Michael Lemcke initially attempted to alienate Dylan's affection from his mother and her extended family.

**Affirmed.**