*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A23-0845**

Justin Dean Schultz,
Respondent,

vs.

Analisa French Perkins,
Appellant.

**Filed June 17, 2024
Affirmed in part, reversed in part, and remanded
Bratvold, Judge**

Winona County District Court
File No. 85-FA-19-994

Dominique J. Navarro, Navarro Law Firm, PLLC, Rochester, Minnesota (for respondent)

Theresa M. Gerlach, Law Office of Theresa Gerlach, Minnetonka, Minnesota (for appellant)

Considered and decided by Bratvold, Presiding Judge; Connolly, Judge; and Smith, Tracy M., Judge.

**NONPRECEDENTIAL OPINION**

**BRATVOLD**, Judge

In this appeal from the district court's order denying mother's motions to modify custody, parenting time, and child support, mother argues that the district court erred by (1) denying her motion to modify custody, (2) denying her alternative request for two additional weeks of parenting time in the summer, and (3) denying her motion to modify

child support. Because the district court did not abuse its discretion by denying mother's motion to modify custody, we affirm in part. But because the district court implicitly denied, without findings or discussion, mother's alternative request for additional summer parenting time and mother's motion to modify child support, we reverse in part and remand for proceedings consistent with this opinion and as discussed below.

## FACTS

Appellant Analisa French Perkins (mother) and respondent Justin Dean Schultz (father) are the parents of A.J.S. (the child), who was born in April 2011. Mother and father have never been married. Until 2019, the child lived with mother and the parents cooperated with parenting time and child support. No court order governed custody or parenting time.

In 2017, father admitted to mother that he "had been using [methamphetamines] for years." Mother's brief to this court acknowledges that, as of February 2019, father was "drug-free."

In May 2019, mother was civilly committed for mental-health reasons. Father petitioned for custody and a parenting-time schedule. Mother testified at a 2019 hearing that she "believed that [father] was sober and that" father having custody of the child "would be the best thing" for the child while mother got treatment for her mental-health needs. Mother and father agreed to a change in custody, and in December 2019, the district court issued an order granting father sole legal and sole physical custody of the child, granting mother supervised parenting time, and reserving child support. At the time of the

order, father's home was in Goodview and mother resided about 50 miles away in Rochester.

Mother's civil commitment ended in 2020. In October 2022, mother moved to (1) modify legal and physical custody so that the child would reside primarily with mother, (2) modify parenting time to provide that father's parenting time was supervised and on alternate weekends, and (3) modify child support based on the changes in parenting time. Mother also sought attorney fees.

In an affidavit submitted in support of her motion, mother averred that a substantial change in circumstances had occurred since the 2019 order was issued. Specifically, she attested that (1) the child was "endangered in [father's] care" because father "has admitted to having a drug problem," father also has "methamphetamines, marijuana, and mushrooms in his apartment where he lives with [the child] and a loaded handgun in the vehicle he uses to transport" child, and father has been charged with criminal offenses related to drug and firearms possession; (2) mother's "mental health issue that caused the 2019 order has been resolved," mother is in therapy, and mother has "stable work and housing"; and (3) the child had "integrated into [mother's] home by consent of the parties" because mother has had unsupervised parenting time every other weekend by consent of the parties.

After a hearing on December 16, 2022, the district court issued an interim order finding that "the incident mother was primarily concerned about" relating to father's drug use and firearm possession "occurred back in April 2022" and that "there is no present endangerment proven that would justify the urgent modification of the custody arrangement." The district court "set the matter on for an evidentiary hearing for [mother]

3

to make her arguments as to why a change in custody is in the child's best interest based on her claim that there has been a significant change of circumstances in her life and the life of the child that warrants a reconsideration of the current custody order."

At a scheduled evidentiary hearing on February 24, 2023, mother supplemented her parenting-time request, asking that mother's "existing every other weekend parenting time be expanded to include holidays and two nonconsecutive weeks per year in the summers for vacation time." Several witnesses testified at the hearing, including mother, father, mother's psychologist, mother's former coworker, mother's uncle, and mother's friend.

Father testified, first, about his role as the child's primary custodian since 2019. He testified that the child attends middle school in Winona, has friends at school, participates in band, and plans to begin karate in the summer. Father described the child as "a shy kid" but said that he can be "outgoing" when "around the people that he's comfortable with." Father also explained that the child has a health condition that requires a pacemaker and special medical care.

He added that he and mother agreed she should have unsupervised parenting time with the child every other weekend. Father acknowledged that they were exchanging the child at a designated exchange center because he and mother had some difficulty recently and exchanges often led to "arguing, yelling, [and] disagreements." After one incident in 2022, father asked police to remove mother from his property "because she refused to leave" when the child was at father's home. Father petitioned for and received a harassment restraining order (HRO) against mother. The HRO is not included in the record.

4

Father admitted that he has struggled with drug abuse throughout his life but testified that he has been sober since April 2022, when he was charged with (1) being a felon in possession of a firearm, (2) third-degree possession of methamphetamine, (3) fifth-degree possession of methamphetamine, and (4) being an unlawful controlled-substance user in possession of a firearm. He testified that child-protective services did not "get involved" before or after his 2022 criminal charges. He also explained that, as a result of the criminal proceedings, the district court imposed probation for five years, ordered that he complete 80 hours of community service, and required a chemical-dependency evaluation.

Father agreed during cross-examination that, at one point within the past year, he kept drugs in the apartment where he lived with the child, and he added that the drugs were "locked in a safe." He also agreed that he kept a loaded firearm in his vehicle and that it was the same vehicle he used to transport the child. But father testified that he "never transported [the child] with a loaded firearm in the vehicle."

The district court denied mother's motion to modify custody, ordered that father have sole legal and sole physical custody of the child, ordered that mother should have "liberal and meaningful" parenting time every other weekend with exchanges scheduled at visitation-exchange centers, established a holiday parenting-time schedule, and denied mother's request for attorney fees. The order did not address mother's request for another two weeks of parenting time in the summer or mother's motion to modify child support.

The district court found, as it did in the interim order, that no present endangerment warranted a modification of custody. The district court also pointed out that mother's

5

affidavit and testimony stated that she learned of father's April 2022 offense on October 2, 2022. But on cross-examination, mother "admitted she knew of these charges as early as April 2022." The district court found that mother was "less than candid" and that the criminal charges were "old information" that mother "sat on . . . until October 2022."

The district court also rejected mother's argument that there had been a substantial change in circumstances based on father's drug use. The district court stated that "father was an addict long before mother agreed to changing custody to father back in 2019." Based on its findings that father "has been candid about his historical struggle with controlled substances," that father "is an addict who is now in recovery," as well as that father is currently sober and successful on probation, the district court found no change in circumstances related to father's drug use.

The district court also made findings about mother's claim that she made "positive changes" relating to her mental health. The district court found that mother's treating counselor stated that "mother is doing well without any current concerns," that mother is "training to be an EMT/Paramedic," and that mother works part-time as a cleaner in an apartment complex. The district court further found that "mother testified that she is the parent of two children including a fifteen-year-old son who lives with his father in St. Cloud." Mother added that she sees her fifteen-year-old son "one weekend a month and the father has coordinated her parenting time so that the boys can be together on those weekends." But the district court also found that "there is a current [HRO] in place" that is "due to the actions of the mother against the father and not visa-versa."

6

The district court rejected mother's claim that the child had integrated into her household after determining that "[m]other produced absolutely no evidence of integration" because "her testimony established that the child enjoys a traditional every-other weekend visitation schedule and that father has tried to be very flexible to ensure support for the mother-child relationship."

Finally, the district court evaluated the best-interests factors "for the purposes of determining issues of custody and parenting time," citing Minn. Stat. § 518.17, subd. 1 (2022). The district court determined that ten factors favored father and two factors were neutral; no factors favored mother. The district court concluded that the best-interests factors weighed in favor of father maintaining sole legal and sole physical custody and granting parenting time for mother on alternating weekends.

Mother appeals.

**DECISION**

**I.    The district court did not abuse its discretion by denying mother's motion to modify legal and physical custody.**

"Appellate review of custody determinations is limited to whether the [district] court abused its discretion . . . ." *Pikula v. Pikula*, 374 N.W.2d 705, 710 (Minn. 1985). "A district court abuses its discretion by making findings of fact that are unsupported by the evidence, misapplying the law, or delivering a decision that is against logic and the facts on record." *Woolsey v. Woolsey*, 975 N.W.2d 502, 506 (Minn. 2022) (quoting *Bender v. Bernhard*, 971 N.W.2d 257, 262 (Minn. 2022)). "We review the [district court's] findings [of fact] for clear error, giving deference to the district court's opportunity to evaluate witness

7

credibility and reversing only if we are left with the definite and firm conviction that a mistake has been made." *Thornton v. Bosquez*, 933 N.W.2d 781, 790 (Minn. 2019) (quotation omitted); *see* Minn. R. Civ. P. 52.01 (stating that findings of fact are not set aside unless clearly erroneous). A finding of fact is clearly erroneous if it is "manifestly contrary to the weight of evidence or not reasonably supported by the evidence as a whole." *In re Civ. Commitment of Kenney*, 963 N.W.2d 214, 221 (Minn. 2021) (quotation omitted). When applying the clear-error standard of review, this court (1) views the evidence in the light most favorable to the district court's findings, (2) does not reweigh the evidence, (3) does not engage in fact-finding, (4) does not reconcile conflicting evidence, and (5) "need not go into an extended discussion of the evidence to prove or demonstrate the correctness of the findings of the [district] court." *Id.* at 221-22 (quotation omitted).

### A. We need not address whether the district court abused its discretion by determining that mother failed to allege a prima facie case of endangerment.

We review a district court's determination of whether a party presented a prima facie case for custody modification for an abuse of discretion. *See Szarzynski v. Szarzynski*, 732 N.W.2d 285, 292 (Minn. App. 2007). To determine whether there is a prima facie case for custody modification, a district court considers whether the movant alleged facts that, if true, provide sufficient grounds for modification. *Woolsey*, 975 N.W.2d at 507. Specifically, to make a prima facie case to modify custody, the movant must allege that (1) the circumstances of the child or the parties have changed; (2) modification would serve the child's best interests, and (3) one of the five specific additional grounds for modification as set out in Minn. Stat. § 518.18(d)(i)–(v) (2022) exists. *Id.* One of these five

grounds is that "the child's present environment endangers the child's physical or emotional health or impairs the child's emotional development." Minn. Stat. § 518.18(d)(iv). But a prima facie case is not made if the allegations are merely conclusory, "too vague to support a finding of endangerment," or "devoid of allegations supported by any specific, credible evidence." *Szarzynski v. Szarzynski*, 732 N.W.2d 285, 292 (Minn. App. 2007) (quotations omitted), *rev. denied* (Minn. Oct. 16, 2006); *see Miller v. Miller*, 953 N.W.2d 489, 494 (Minn. 2021) (requiring the district court, when addressing a motion to intervene, to accept the movant's allegations unless they are "frivolous on their face").

If the movant does present a prima facie case, then "the district court must hold an evidentiary hearing on the motion." *Woolsey*, 975 N.W.2d at 508. If the prima facie case is based on endangerment, the movant "must allege (1) the circumstances of the child[] or custodian have changed; (2) modification would serve the [child's] best interests, (3) the [child's] present environment endangers their physical health, emotional health, or emotional development; and (4) the benefits of the change outweigh its detriments" for the child. *Christensen v. Healey*, 913 N.W.2d 437, 440 (Minn. 2018).

Mother argues that the district court abused its discretion in its interim ruling that father's drug and firearm use and possession did not satisfy the statutory standard for endangerment. Mother contends that the district court erred by determining that mother "did not allege a prima facie case of endangerment to modify custody" because, by scheduling an evidentiary hearing, the district court "implicitly [determined] that [mother] had alleged and established a sufficient prima facie case for custody modification."

9

The district court's interim ruling stated that mother's petition and other submissions did not present a prima facie case of endangerment based on father's recent criminal charges and drug use. Still, the district court determined that an evidentiary hearing was appropriate to address two other grounds for custody modification: mother's stable mental health and the child's integration into mother's household. During the evidentiary hearing, the district court received evidence on father's recent criminal charges, his drug use, and his firearms possession, and the district court's subsequent order made relevant factual findings on all three grounds presented by mother.

Because the district court held an evidentiary hearing on all grounds that mother alleged for custody modification and decided mother's endangerment allegations on the merits, we need not consider mother's argument about whether the district court abused its discretion in the interim ruling on endangerment.

### B. The district court did not clearly err by finding that the child's present environment does not endanger the child.

Mother argues that the district court abused its discretion by determining that her motion to modify based on endangerment was "meritless." Mother contends that the record shows father has a "long history of methamphetamine use and recent relapse" and that the district court "minimized these issues and failed to acknowledge the significant negative effects" on the child. The existence of endangerment is a question of fact that we review for clear error. *See Sharp v. Bilbro*, 614 N.W.2d 260, 263-64 (Minn. App. 2000), *rev. denied* (Minn. Sept. 26, 2000).

10

We first address the relevant caselaw. Mother also urges that relevant caselaw suggests that "anticipated adverse effects" may support a finding of endangerment. We disagree. The Minnesota Supreme Court has determined that endangerment "is concerned with whether the child's present environment endangers the child . . . not whether the child may be endangered by future events." *Goldman v. Greenwood*, 748 N.W.2d 279, 285 (Minn. 2008) (emphasis omitted) (quotation omitted). Accordingly, endangerment requires evidence of the child's present environment to warrant a change in custody. *See Sharp*, 614 N.W.2d at 263-64 (determining that the record supported a finding of endangerment based on testimony indicating that a parent's current conduct "will cause emotional psychological damage to [the] child" (emphasis omitted)).

The record supports the district court's finding that the child's present environment—living with father—does not endanger the child's physical or emotional health or development. The district court found that "father made some egregious decisions when he relapsed," but he was "caught, charged and immediately took responsibility for his mistakes." Father has "been candid about his historical struggle with controlled substances" and "is now in recovery." The district court also found that father's "entire criminal case was very nearly resolved by the time mother brought her motion before the court." The district court also noted that father's addiction was not a change in circumstances because father "was an addict long before mother agreed to changing custody" in 2019. The district court found that father's addiction "is a continuation of life as the child has come to know it for the majority of his life." Accordingly, given that father's criminal case was resolved before the evidentiary hearing and that father was sober

and in recovery, the district court determined that there was no present endangerment to the child.

Because the record fully supports the district court's findings, we conclude that the district court did not clearly err by finding that mother did not prove endangerment and thus did not abuse its discretion by denying mother's motion to modify custody on this ground.

Mother also argues that the district court erred by finding "that mother exposed the child to men who took drugs." "[T]o further discredit mother's claims" that father's drug use endangers the child, the district court found that, while in mother's care, the child "has been exposed to other men who were important in mother's life who struggled with chemical use." The district court found that, in 2019, mother's significant other "overdosed and died, sending her into a state of depression that warranted her civil commitment."

Mother's brief to this court acknowledges that, in 2019, her "then boyfriend" overdosed and died and "her mental health plummeted," leading her to enter a mental-health facility and, ultimately, to her civil commitment. While mother is correct that the record does not support the district court's finding that the child was exposed to drug use related to these sad events, that cannot alone support mother's request for reversal. Existence of error alone is not enough to warrant relief; an appellant must also show that the error caused prejudice. *See* Minn. R. Civ. P. 61 (requiring that harmless error be ignored); *Goldman*, 748 N.W.2d at 285 (citing this aspect of Minn. R. Civ. P. 61). This finding is part of the district court's discussion of father's history of addiction and its determination that the child was not endangered in father's care. We note that this

erroneous finding is not mentioned in the district court's best-interests analysis. And the district court's decision does not appear to have relied in any other respect on the erroneous finding that mother exposed the child to "other men . . . who struggled with chemical use." Thus, we conclude that the error was harmless.

**C. The district court did not abuse its discretion by determining that no modification was warranted based on changes in mother's mental health.**

Mother's modification motion was based, in part, on her allegations of substantial changes in circumstances relating to her own mental health. Mother also argued in her modification motion that the child had "integrated into [mother's] home by consent of the parties." The district court expressly rejected the integration argument, finding that "mother produced absolutely no evidence of integration." Mother does not raise integration in her brief to this court. As a result, we do not consider it.

As for mother's mental health, the district court found that mother's "mental health crisis" had been resolved, her treating counselor testified that she was "doing well without any current concerns," mother continues in treatment, she "has undertaken the education and training to be an EMT/Paramedic," and she is employed cleaning apartments. These findings indicate that the district court found significant changes in mother's circumstances since the 2019 custody order, although the district court does not expressly say that those changes were "substantial."

The district court then evaluated whether a modification of custody was warranted by discussing each of the 12 best-interests factors set out in Minn. Stat. § 518.17 subd. 1 (2022). Ten factors favored father, two factors were neutral, and no factors favored mother.

13

Mother argues that the record does not support some findings of fact in the district court's analysis of the best-interests factors. "[W]e review the [district court's] findings [of fact] for clear error, giving deference to the district court's opportunity to evaluate witness credibility and reversing only if we are left with the definite and firm conviction that a mistake has been made." *Thornton*, 933 N.W.2d at 790 (quotation omitted). We address each of mother's challenged findings in turn.

First, mother argues that the district court erred by finding that "mother did not provide sufficient evidence as to the stability of her housing." Mother argues that "the record is clear that at the time of trial mother had lived in her home for over four years." While mother is correct that she testified that she had resided in the same home for four years, she takes the district court's finding out of context. The district court was addressing the willingness and ability of each parent to provide ongoing care for the child and meet the child's needs. When the district court discussed mother's ability to do so, the district court noted that mother did not provide evidence about any school arrangements for the child if he were to live with her. In contrast, the district court found that father had shown he is able to meet the child's housing and schooling needs, among other needs, over the four years he had sole physical and sole legal custody. Accordingly, even if we assume that the district court erred in finding that mother lacked stable housing, we would, nonetheless, conclude that the district court did not abuse its discretion by concluding that this factor favors father as the child's custodian.

Second, mother argues that the district court clearly erred by "finding that the child was doing well in school when there was no evidence regarding the child's school

14

performance." During the evidentiary hearing, the district court sustained mother's objection and excluded father's testimony that the child was "doing well" in school. But in other testimony, father stated that the child has friends at school, participates in band, and will be starting karate in the summer. And in discussing the related best-interests factor of the child's emotional needs, the district court found that, since 2019, the child "has established ties with friends, a support network and is thriving at school." Although the record did not specifically include evidence that the child is "doing well" or "thriving" in school, this is a reasonable inference based on father's testimony.

More importantly, mother takes this finding out of context. The district court discussed the best interests of the child given the "effect on the child's well-being and development of changes to home, school, and community." The district court concluded that "[a]ny significant changes, including a change of custody to mother and the child's subsequent schooling and social life will undeniably disrupt the child's life and his well-being." Thus, the district court's finding that this factor favors father maintaining custody is supported by the record.

Third, mother argues that the record does not support the district court's findings that mother (1) filed an ex parte motion, (2) "had caused delays in the case," (3) "'sat on' the information about . . . father's drug charges for months before she filed her motion," (4) had several attorneys who withdrew, prolonging litigation, and (5) delayed the hearing by seeking continuances. Even if we conclude that each of these challenged findings is clearly erroneous, the existence of error is not enough to warrant relief on appeal. Mother must also show that the error caused prejudice. *See* Minn. R. Civ. P. 61 (requiring that

15

harmless error be ignored); *see Goldman*, 748 N.W.2d at 285. None of these findings affected the district court's analysis of endangerment, mother's change in circumstances, or the district court's assessment of the best-interests factors.[1] Accordingly, any error was harmless.[2]

Thus, having concluded, first, that the district court did not abuse its discretion by rejecting endangerment as grounds for custody modification and, second, that the district court did not abuse its discretion in its analysis of the best-interests factors, we finally conclude that the district court did not abuse its discretion by denying mother's custody-modification motion.[3]

---

[1] While the findings that mother "sat on" the information about father's drug charges and made an ex parte motion were mentioned in the district court's endangerment analysis, they were not necessary to the conclusion that there was no endangerment.

[2] The district court determined that mother should not be awarded attorney fees because (1) her motion was meritless, (2) mother needlessly lengthened the proceedings because "[s]he has been through a number of attorneys," and (3) "[f]ather cannot pay her fees and pay for his own attorney as well." The record shows that mother has had the same attorney from the time she filed the motion to modify until the evidentiary hearing. Even though the record does not support the district court's finding that mother had "a number of attorneys," we conclude that this error is harmless. Mother's motion for attorney fees was denied, in part, based on father's inability to pay, which is sufficient to support the district court's decision to deny attorney fees. Mother's brief to this court did not raise the district court's denial of her motion for attorney fees, so we need not consider it further.

[3] Mother's brief to this court also argues that the district court erred by failing to honor the parties' agreement that they would share joint legal custody. Father argues that they had no agreement. We can find no basis in the record supporting mother's claim of an agreement on custody. During the evidentiary hearing, father agreed on cross-examination that he and mother "should have equal say in" major decisions for the child. But father did not testify that he agreed to share joint legal custody. Therefore, the district court did not abuse its discretion because the parties had no agreement on legal custody.

16

**II.** **The district court abused its discretion by implicitly denying mother's alternative request for summer parenting time without any discussion or related findings.**

In her motion, mother requested that the child live with her and that father have supervised parenting time every other weekend. At the hearing, mother also requested, in the alternative, that mother's "existing every-other-weekend parenting time be expanded to include holidays and two nonconsecutive weeks per year in the summers for vacation time." The district court ordered that mother have parenting time on alternate weekends and established a holiday parenting-time schedule. The district court did not address mother's request for two nonconsecutive weeks of parenting time during the summer. The district court has broad discretion in deciding parenting-time questions and will not be reversed absent an abuse of discretion. *Shearer v. Shearer*, 891 N.W.2d 72, 75 (Minn. App. 2017).

Mother challenges the district court's parenting-time order in three respects, which we discuss in turn. First, mother argues that the district court abused its discretion and criticizes the district court's holiday parenting-time schedule. We reject mother's holiday-schedule argument as unsupported by the record.[4]

---

[4] Mother argues that the "district court abused its discretion by failing to include the parties' stipulation[]" for the holiday parenting time. Father argues that mother's "counsel declared during her opening statement that the parties [had] an agreement regarding a holiday schedule, but it was never confirmed by [father] on the record or otherwise." Indeed, mother's opening statement included the comment that father agreed to a holiday schedule. Father is correct, however, that nothing in the record shows the parties submitted an agreed-upon holiday schedule. Accordingly, the district court did not abuse it discretion by ordering a holiday schedule that differed from mother's proposed schedule.

17

Second, we address mother's request for two nonconsecutive weeks of parenting time during the summer. Mother argues in her brief to this court that the "district court erred by failing to address mother's alternative parenting time schedule modification requests." We agree that the district court failed to address mother's alternative request for more parenting time in the summer because the district court's order does not discuss the issue, nor does the order include any relevant factual findings. "Appellate courts cannot assume a district court erred by failing to address a motion, and silence on a motion is therefore treated as an implicit denial of the motion." *Palladium Holdings, LLC v. Zuni Mortg. Loan Tr. 2006-OA1*, 775 N.W.2d 168, 177-78 (Minn. App. 2009), *rev. denied* (Minn. Jan. 27, 2010). Thus, the district court implicitly denied mother's request for summer parenting time.

In part, mother contends that the district court did not apply best-interests factors. We therefore consider the district court's best-interests analysis as it is most closely related to parenting time. The district court observed that the parents' homes are not near each other and that the best-interests factor of "maximizing parenting time with both parents" favors "maintaining the status quo and the consistency of the current parenting arrangement." The district court determined that it was in the child's best interests to continue living with father rather than to uproot the child "from his life to move to Rochester" with mother.

But the district court's concern about uprooting the child given the distance between the parents' homes does not apply to two weeks of parenting time during the summer. We cannot further review the district court's implicit denial of mother's request for summer

18

parenting time, however, because we cannot discern the district court's reasoning. "Effective appellate review of the exercise of [the district court's discretion] is possible only when the [district] court has issued sufficiently detailed findings of fact to demonstrate its consideration of all [relevant] factors . . . ." *Stich v. Stich*, 435 N.W.2d 52, 53 (Minn. 1989) (reversing the district court's spousal-maintenance decision based on insufficient findings and remanding the matter to the district court "for additional findings"). Accordingly, we reverse the district court's implicit denial of mother's request for summer parenting time and remand the issue for further proceedings consistent with this opinion.

Third, mother argues that the district court erred "by failing to award [mother] the statutory minimum parenting time of 25% or 91 overnights." Under Minn. Stat. § 518.175, subd. 1(g) (2022), "there is a rebuttable presumption that a parent is entitled to receive a minimum of 25 percent of the parenting time for the child." We have applied this statute to modification motions. *See Dahl v. Dahl*, 765 N.W.2d 118, 124 (Minn. App. 2009).

But mother raises this parenting-time issue for the first time on appeal. We rarely consider issues not argued to or considered by the district court. *Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988). Accordingly, we decline to address this issue on appeal, but mother may raise the issue on remand to the district court.

### III. The district court abused its discretion by implicitly denying mother's child-support-modification motion without any discussion or related findings.

Mother argues that the district court abused its discretion by "refus[ing] to address [her] child support modification motion." Appellate courts generally review orders modifying child support "for abuse of discretion." *Haefele v. Haefele*, 837 N.W.2d 703,

19

708 (Minn. 2013). A district court abuses its discretion if its decision is based on a misapplication of the law, is contrary to the facts, or is contrary to logic. *Shearer*, 891 N.W.2d at 77.

The terms of a child-support order may be modified if there is a showing of a certain change of circumstances that "makes the terms unreasonable and unfair." Minn. Stat. § 518A.39, subd. 2(a) (2022). There is a presumption under Minn. Stat. § 518A.39, subd. 2(b)(1) (Supp. 2023), that there has been a substantial change in circumstances and the current order is unreasonable and unfair if a child-support-guidelines calculation based on the parties' current incomes "is at least 20 percent and at least $75 per month higher or lower than the current support order."

The district court's order does not discuss mother's child-support-modification request. At the evidentiary hearing, the district court pointed out that the parties have an open IV-D child-support case and could seek modification in an expedited process before a child-support magistrate.[5] The district court stated that it is "more straightforward for the magistrate to churn through it [in the expedited process] because they're really good at it." The district court acknowledged that it "could" address the child-support-modification motion, but it is "just not as good at it as [the magistrates] are. They're a lot smarter." The district court did not make any findings about the parties' incomes or discuss child support

---

[5] A IV-D case is "a case where a party has assigned to the state rights to child support because of the receipt of public assistance . . . or has applied for child support services under title IV-D of the Social Security Act., United States Code, title 42, section 654(4)." Minn. Stat. § 518A.26, subd. 10 (2022).

in its order. We accordingly treat the district court's silence on child-support modification as an implicit denial. *See Palladium Holdings*, 775 N.W.2d at 177-78.

Father argues that, under Minn. R. Gen. Prac. 353.01, subd. 1, child-support modification proceedings "shall be conducted in the expedited process if the case is a IV-D case," and therefore, the district court did not err in refusing to address the child-support motion because the expedited process is mandatory.

We disagree. Rule 353.01, subdivision 1, states that there are exceptions to the expedited-process requirement "as provided in subdivision 2 and Rule 353.02." Minnesota General Rule of Practice 353.02, subdivision 1, states that "[t]hese rules do not prevent a party . . . from commencing a proceeding or bringing a motion in district court if the proceedings or motion involves one or more issues identified in Rule 353.01, subd. 1, and one or more issues identified in Rule 353.01, subd. 3," such as modification of custody or parenting time. Additionally, rule 353.02, subdivision two, provides that "the district court judge shall decide all issues before the court" and allows a district court to refer support issues to an expedited-process court "[i]f the district court judge cannot decide the support issues without an additional hearing." Minn. R. Gen. Prac. 353.02, subd. 2. In short, even though child support may be determined in an expedited process before a magistrate, that did not preclude mother from seeking relief in district court in connection with her motion for modification of custody or parenting time. Also, while the district court may refer child-support issues to the expedited process, the district court did not make a referral here.

No legal analysis or findings of fact support the district court's implicit denial of mother's motion to modify child support. We therefore cannot further review the district

court's denial of mother's motion to modify child support. *See Stich*, 435 N.W.2d at 53. Thus, we reverse the district court's implicit denial of mother's motion to modify child support and remand for the district court to either decide the issue or refer it to an expedited process.

## IV.   We decline to consider mother's proposed "new rule of law."

Mother's brief to this court argues that we should "create a new rule of law" about child-custody rights based on stipulation. Mother argues that when she stipulated to granting father sole legal and physical custody in 2019, she was not provided with the notices required by Minn. Stat. §§ 518.17 and 518.68 (2022). She urges this court to adopt a new rule of law about the standard for modification of child-custody orders and to determine that

> [w]here an initial custody order fails to provide notice according to section 518.17, subd. 3a, [and the custody order] was entered based upon the stipulation of parties, and: (1) one party was unrepresented and did not waive the right to an attorney, and (2) that party was subject to a civil commitment or (3) that party was on medication that affected her ability to understand the proceedings; a subsequent custody modification motion should be made based on 518.17's best interests of the child standard.

Father argues that (1) the court of appeals "should not entertain" this issue because it was not presented to the district court; (2) the issue relates to mother's testimony at the December 2019 hearing, and mother has not provided this court with a transcript of that hearing; and (3) mother "is, effectively, asking that this court rewrite [Minn. Stat. § ] 518.17, which is for the legislature, not this court."

Mother did not raise this issue during district court proceedings. Under *Thiele*, this court generally declines to hear matters raised for the first time on appeal. 425 N.W.2d at 582. We therefore do not address this issue. We note, however, that the district court applied the best-interests factors from Minn. Stat. § 518.17 in deciding mother's motion to modify custody. While this may not address mother's concerns in their entirety, she must first raise the issue in district court before seeking relief on appeal in this court.

**Affirmed in part, reversed in part, and remanded.**