## Karen Begins v. David Begins

[721 A.2d 469]

No. 97-334

Present: Amestoy, C.J., Dooley, Morse, Johnson and Skoglund, JJ.

Opinion Filed September 11, 1998

*Janet P. Shaw* of *Marsh & Associates, P.C.*, Middlebury, and *Jeremy Dworkin*, South Londonderry, for Plaintiff-Appellant.

*David Begins*, Pro Se, Vergennes, Defendant-Appellee.

**Johnson, J.** Mother appeals from a divorce judgment of the Addison Family Court. She contends the court abused its discretion by: (1) awarding father primary parental rights and responsibilities; (2) limiting her visitation with the children to twice a week; (3) failing to award adequate spousal maintenance; and (4) awarding substantially less in attorney's fees than she had requested. Father cross-appeals, contending the court erred by: (1) awarding mother limited legal rights and responsibilities to manage the children's mental health counseling; and (2) valuing mother's business property and annual business earnings. We affirm the court's findings concerning mother's business property and annual earnings, and its award of spousal maintenance; reverse the award of parental rights and responsibilities and the award of attorney's fees; and remand for further proceedings on the issues of parental rights and responsibilities, visitation, and attorney's fees.

The material facts are largely undisputed. The parties were married in 1974. Mother was eighteen and father was nineteen years old at the time. They had two sons, B.B. and J.B., who were fifteen and thirteen years old, respectively, at the time of trial. The parties' interests grew apart over the course of their twenty-year marriage. They attended marital counseling, but without success. Mother began an intimate relationship with another man in December 1995, and the parties separated the following year. The court found that mother's affair was not the cause of the marital breakdown, observing that the marriage "had already failed."

The court further found that mother had been the primary care provider for the children all their lives prior to the separation. Thereafter, the boys began to spend more time with father, and their relationship with mother deteriorated. Although the marital breakdown and mother's extramarital relationship had contributed to B.B.'s animosity toward mother, the court found that father had encouraged the son's animosity by unfairly blaming her for the parties' marital problems, and making disparaging remarks about her lifestyle. Concerning a letter the court had received from the younger boy expressing a preference to live with father, the court observed that it was not the product of an eighth grader. The boy's recriminations against mother, the court concluded, "clearly reflected discussions" with father, and further persuaded the court of father's nonconstructive role in corroding the boys' relationship with mother.

The court concluded that while several factors had contributed to the estrangement between mother and sons, "the single most signif-

icant factor has been a constant poisoning of the relationship by the father."

In reaching its custody determination, the court noted that "on [the] two most important criteria for custody — continuation by the primary custodian and favoring the parent who is most likely to foster a healthy relationship between the boys and the noncustodial parent — the mother would seem to be the custodian of choice." Indeed, as to the younger boy, the court expressly found that mother was "more likely to provide suitable custodial guidance." Nevertheless, the court concluded that the boys' hostility toward mother, encouraged and fueled by father, precluded an award of custody to mother. The court explained: "The father may not deserve to win custody of the boys, but he has effectively done so." Accordingly, the court awarded father sole physical and legal rights for the children, and granted mother limited visitation. In response to mother's subsequent motion to amend, the court modified the decree by awarding mother "limited legal custody for the purpose of managing all family and mental health counseling of the two boys."

On the subject of spousal maintenance, the court noted that father was employed fulltime and that his earnings for 1996 were $53,170. Mother had worked primarily as a homemaker, and had been developing a small clothing design and manufacturing business. The business had been growing, but had never shown significant profits; mother's earnings in 1996 were between $7000 and $8000. Accordingly, the court awarded mother rehabilitative maintenance of $1600 per month for two years, and $1333 per month thereafter for an additional six years, based upon the expectation that her income would increase. Noting, however, that mother was forty-one years old, was not burdened by custody of the children or ill health, and could eventually obtain employment sufficient to maintain her previous lifestyle, the court expressly declined to award permanent maintenance. In addition, the court ordered father to pay $5000 toward mother's attorney's fees, substantially less than the $33,000 in fees she had incurred. This appeal followed.

## I.

Mother first contends the court abused its discretion by awarding custody of the children to father based upon their estrangement from mother, notwithstanding the court's express finding that the most significant cause of the estrangement had been a constant poisoning of the relationship by father.

The family court is ordinarily accorded broad discretion in custody matters. *Nickerson v. Nickerson*, 158 Vt. 85, 88, 605 A.2d 1331, 1333 (1992). Given its unique position to assess the credibility of witnesses and weigh the evidence, we will not set aside the court's findings if supported by the evidence, nor its conclusions if supported by the findings. See *Johnson v. Johnson*, 163 Vt. 491, 496, 659 A.2d 1149, 1152 (1995). Conclusions that are not supported by the court's findings, however, cannot be sustained. See *Bisson v. Ward*, 160 Vt. 343, 350, 628 A.2d 1256, 1261 (1993).

The court's paramount consideration in awarding parental rights and responsibilities is the best interests of the child. See *Bissonette v. Gambrel*, 152 Vt. 67, 70, 564 A.2d 600, 602 (1989); 15 V.S.A. § 665(b). A critical statutory factor guiding the court's determination is "the ability and disposition of each parent to foster a positive relationship and frequent and continuing contact with the other parent, including physical contact, except where contact will result in harm to the child or to a parent." 15 V.S.A. § 665(b)(5). Other statutory factors, including of course the child's relationship with the primary care provider, must be weighed in the balance, and may in certain cases be decisive. See *Bissonette*, 152 Vt. at 70, 564 A.2d at 601-02 (evidence that mother had rebuffed father's childcare efforts did not outweigh her primary-care provider relationship with child). "The focus of the court's decision must be the best interest of the child, not equity between the parties." *Id.*

As we observe in *Renaud v. Renaud*, 168 Vt. 306, 309, 721 A.2d 463, 466 (1998), "a child's best interests are plainly furthered by nurturing the child's relationship with *both* parents, and a sustained course of conduct by one parent designed to interfere in the child's relationship with the other casts serious doubt upon the fitness of the offending party to be the custodial parent." Such conduct represents, in one court's view, an act so inconsistent with the best interests of the child that it raises a strong possibility that the offending party is unfit to act as a custodial parent. See *Young v. Young*, 628 N.Y.S.2d 957, 958 (App. Div. 1995); see also *Lewin v. Lewin*, 231 Cal. Rptr 433, 437 n.4 (Ct. App. 1986) (change of custody compelled where mother had "engaged in ongoing conduct intended and designed by her to impede, obstruct, frustrate, and interfere with the development of a healthy father-daughter relationship"); *In re Leyda*, 355 N.W.2d 862, 866 (Iowa 1984) (holding that court abused discretion in awarding custody to mother where evidence disclosed that she had sought to denigrate and deny emotional relationship between child and father); see

generally Annotation, *Alienation of Child's Affections as Affecting Custody Award*, 32 A.L.R.2d 1005 (1953) (collecting cases).

The court here expressly found that father had "encouraged" the boys' hostility toward, and "corrod[ed]" their relationship with, mother. While other factors had contributed to the children's estrangement from mother, the court found that "the single most significant factor has been a constant poisoning of the relationship by father." Moreover, based upon other important criteria such as continuing custody in the primary caregiver, and fostering a positive relationsip with the noncustodial parent, the court found unequivocally that mother was the "custodian of choice."

These findings, which father has not challenged, raise serious doubts about his fitness to serve as the custodial parent. His conduct and attitude demonstrated virtually no capacity to place the interests of the children above his own in fostering a positive relationship with mother. See *Janecka v. Franklin*, 542 N.Y.S.2d 206, 208 (Sup. Ct. 1989) (affirming custody award to father where evidence showed mother unable to place children's needs above her own "unbridled" anger against father). Indeed, the court found that father did not "deserve to win custody," yet reasoned that he had "effectively done so" as a result of his own misconduct, and thus concluded that it had no other choice but to award custody to father.

We categorically reject such reasoning. "[A] parent who willfully alienates a child from the other parent may not be awarded custody *based on that alienation*." *McAdams v. McAdams*, 530 N.W.2d 647, 650 (N.D. 1995) (emphasis added). Although obviously well intended, the court's decision effectively condoned a parent's willful alienation of a child from the other parent. Its ruling sends the unacceptable message that others might, with impunity, engage in similar misconduct. Left undisturbed, the court's decision would nullify the principle that the best interests of the child are furthered through a healthy and loving relationship with both parents.

We fully recognize the practical considerations that impelled the family court to its conclusion, and do not contend that an award to mother will magically negate father's baleful influence, or effect an immediate reconciliation with the children. While certainly an important consideration, however, a child's immediate preference for a particular parent may not necessarily serve the child's *long-term* best interests where that preference was fostered by the preferred parent's hostility toward the other. See *Young*, 628 N.Y.S.2d at 963 (holding that, in view of mother's consistent preaching that father was

evil, trial court incorrectly placed emphasis on children's desire to remain with mother). This is particularly true where, as here, the target of the hostility had been the children's primary care provider.

■ In light of the court's express findings that mother had been the primary caretaker before the separation, that father had been the principal cause of the boys' estrangement from mother, and that every other consideration rendered mother the more suitable custodian, we conclude that the court's decision to award parental rights and responsibilities to father was untenable. An award so flagrantly at odds with the findings simply cannot be allowed to stand. See *Bisson*, 160 Vt. at 350, 628 A.2d at 1261 (conclusions not supported by court's findings cannot be sustained). Accordingly, we conclude that the award of parental rights and responsibilities must be reversed, and the case remanded for reconsideration of that issue in light of the views expressed herein, as well as any change in circumstances that may have occurred while this appeal was pending. Because custody and visitation are closely interrelated, we decline to address mother's claim that the court abused its discretion in ordering limited visitation before the court has had the opportunity to reconsider its award of parental rights and responsibilities.

## II.

Mother further claims the court abused its discretion by: (1) failing to award her permanent maintenance; (2) miscalculating the amount of rehabilitative maintenance; (3) failing to impute a $10,000 raise to husband's income for purposes of determining the amount of maintenance; and (4) improperly determining the amount of retroactive maintenance. Upon review of the record, we conclude that the court acted within its broad discretion in denying mother permanent maintenance, and in calculating the award of rehabilitative maintenance. See *Johnson v. Johnson*, 155 Vt. 36, 40, 580 A.2d 503, 506 (1990) (court has substantial discretion in ruling on maintenance).

In expressly declining to award permanent maintenance, the court correctly noted that the most important factors in determining whether maintenance should be permanent or time-limited are the length of the marriage, the role played by the recipient spouse during the marriage, and the income that the recipient spouse is likely to achieve in relation to the standard of living during the marriage, which in turn is closely related to the recipient spouse's age, health, child-care duties, and access to income-producing assets. See *Delozier*

*v. Delozier*, 161 Vt. 377, 383, 640 A.2d 55, 58 (1994); 15 V.S.A. § 752. Examining these factors, the court noted that the parties had been married for many years and that mother had run a business in the home so that she could raise the children. The court also observed that mother was an intelligent and sophisticated person who had been able to develop business skills outside of the home, that she was still relatively young (forty-one years old at the time of the hearing) and was not burdened by ill-health, and that the standard of living during the marriage had been modest. Thus, the court concluded that mother would eventually succeed on her own, either in her own business or other employment, to achieve an independent middle class lifestyle.

Accordingly, the court awarded mother maintenance of $1600 per month for two years, resulting in somewhat unequal income ($34,800 for father, $27,200 for mother) while father had custody of the teenage boys. Thereafter, based upon the court's assumption that mother's background and skills would allow her to earn $20,000 per year, the court awarded her $1333 per month for an additional six years, resulting in roughly equal income with father.

■ These findings and conclusions provide a reasonable basis for the court's decision that father was not required to provide a permanent, fixed income for mother. Although the court observed that it could not predict precisely when mother would reach her earnings potential, this was not fatal to its conclusion that rehabilitative maintenance for a period of eight years was reasonable. See *Tracey v. Gaboriault*, 166 Vt. 269, 279, 691 A.2d 1056, 1062 (1997) (holding that court's award of rehabilitative maintenance for seven years was reasonable although no hard facts demonstrated "unequivocally" that wife would achieve marital standard of living in that time). Accordingly, we find no abuse of discretion in the court's denial of permanent maintenance. The amount of the rehabilitative maintenance award was also reasonably supported by the evidence, and therefore may not be disturbed. See *Johnson*, 155 Vt. at 40, 580 A.2d at 506. Should the court decide on remand to modify the award of parental rights and responsibilities, it may reconsider the maintenance award upon a showing of real, substantial, and unanticipated change of circumstances caused by any change in custody. See 15 V.S.A. § 758.

Mother also claims that, in setting the maintenance award, the court erred in failing to impute to father's income a $10,000 raise that he had apparently declined. Although a court may properly take into account income or assets voluntarily reduced by a spouse "in dero-

gation of the rights" of his or her spouse and child, *Clayton v. Clayton*, 153 Vt. 138, 144, 569 A.2d 1077, 1081 (1989), the court here made no finding, and mother cites no evidence, that this was the purpose of father's decision. Accordingly, we cannot find that the court abused its discretion in failing to impute this additional amount to father's income.

Lastly, mother contends that the court abused its discretion in awarding retroactive maintenance of $11,000 for the eleven month period between her petition for temporary maintenance in January 1996 and the temporary award of $1000 per month in December 1996. She contends the court should have awarded $1600 per month for the period in question. The $1000-per-month award of temporary maintenance was based upon the pleadings and the evidence concerning the parties' respective financial positions for the period in question. Mother has not shown that the award was clearly erroneous in light of this evidence. See *Johnson*, 155 Vt. at 40, 580 A.2d at 506.

## III.

Mother next contends the court abused its discretion in ordering husband to pay $5000 towards her attorney's fees, substantially less than the fees of approximately $16,000 that she had incurred to her primary counsel. The court found that, "[g]iven [mother's] meager income, it was not to be expected that [she] would be able to secure counsel solely on her own." Nevertheless, the only consideration cited by the court in determining the amount of the award was the fact that mother had hired two additional attorneys to try the case, who had incurred additional fees of approximately $17,000. The court explained that father should not "be required to pay the bill for a greater level of representation than he could afford for himself." Father testified that his attorney had charged him between $17,000 and $19,000. Thus, the fees incurred by the parties' primary counsel were roughly equivalent.

An award of attorney's fees in a divorce action is a matter of judicial discretion. See *Kohut v. Kohut*, 164 Vt. 40, 45, 663 A.2d 942, 945 (1995). Unlike contract provisions for attorney's fees, the "financial circumstances of the parties . . . have an important bearing on the award." *Ely v. Ely*, 139 Vt. 238, 241, 427 A.2d 361, 363 (1981). The needs of one spouse and the ability of the other to meet them are the primary consideration. *Id.*; see also *Downs v. Downs*, 159 Vt. 467, 471, 621 A.2d 229, 231 (1993). Here, apart from implying that mother's fees were excessive because of the use of multiple counsel, the court

completely failed to address the parties' respective financial needs and ability to pay. Accordingly, we reverse the attorney's fee award and order the family court to reconsider the issue on remand.

## IV.

In his cross-appeal, father contends the court erroneously found that mother's business had no value other than the physical assets, which it valued at approximately $15,000. He also asserts the court erroneously found mother's annual earnings from the business to be approximately $7000 to $8000. Father's point concerning the value of the business is unclear, since he makes no claim of error concerning the court's overall property division. In any event, we find that the record amply supports the court's valuation of the business, as well as its findings concerning mother's annual earnings. Accordingly, these findings may not be disturbed on appeal. See *Bassler v. Bassler*, 156 Vt. 353, 362-63, 593 A.2d 82, 88 (1991) (court's property division will not be disturbed where evidence supports findings, and findings reasonably support judgment).

In view of our earlier holding reversing the parental rights and responsibilities award to father, and remanding for reconsideration of the custody and visitation issues, we need not address father's remaining claim that the court lacked authority to award partial legal rights and responsibilities to mother. But see *Shea v. Metcalf*, 167 Vt. 494, 500, 712 A.2d 887, 891 (1998) (holding that court may divide legal rights and responsibilities between spouses).

*The findings of the family court valuing mother's business property and annual earnings and the award of spousal maintenance are affirmed; the award of parental rights and responsibilities and the award of attorney's fees are reversed; the case is remanded to the family court for reconsideration of the issues of parental rights and responsibilities, visitation, and attorney's fees consistent with the views expressed herein.*