*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SUPREME COURT DOCKET NO. 2014-345

MAY TERM, 2015

| | | |
|---|---|---|
| Pieter Heydenrych | } | APPEALED FROM: |
| | } | |
| | } | Superior Court, Rutland Unit, |
| v. | } | Family Division |
| | } | |
| | } | |
| Nicole Heydenrych | } | DOCKET NO. 332-7-13 Rddm |

Trial Judge: Cortland Corsones

In the above-entitled cause, the Clerk will enter:

Father appeals from the trial court's decision granting the parties a divorce and awarding mother sole legal and physical rights and responsibilities to the parties' three children. He argues that the court erred in weighing the evidence and in determining a parent-child contact schedule. We affirm.

The court found as follows. The parties married in April 2000 and separated in December 2011. They have three children, born in 2002, 2004, and 2008, respectively. Father is a skilled herdsman with a history of working on and managing farms. At the time of the court's order, father was living in Rutland, Vermont, and he was not employed. Father planned to move to New York with his fiancée after the divorce. Mother was living in Wisconsin in her fiancé's mother's house and working as a housekeeper. The children were doing well in Wisconsin, and mother planned to remain there. The children had been receiving counseling for divorce-related issues since mother and father separated.

The court found that father physically and verbally abused mother during the marriage. Father would call mother worthless, stupid, and say that she should die. Father verbally abused mother in front of the children. In the first year of the parties' marriage, father grabbed mother by the throat and pulled her off the ground. He later grabbed her by the hair and pulled her down a hallway. He destroyed personal property. Father was prosecuted and convicted of assault. He was placed on probation and ordered to take anger management classes. He nonetheless continued to physically and verbally abuse mother. Father also had numerous affairs during the marriage.

In December 2011, when the parties were living in Vermont, father again verbally abused mother. Mother went to a shelter and filed a relief-from-abuse order. At the final hearing on her request, mother testified to abuse during the marriage. Father testified as well. He did not necessarily deny mother's allegations but said that mother overstated the frequency of the abuse. When asked if he disagreed with mother's claim that the abuse happened in front of the children, father responded that he did not know because he would "black out" when that happened. The court issued a final relief-from-abuse order, effective December 2011 through December 2012. The order allowed father to have parent-child contact through a supervised visitation center, and

the court indicated that it would consider unsupervised visits if father took anger management classes. Father initially said that he was not interested in supervised visitation, but then changed his mind and asked that the visits be set up. Mother did not follow up with the visitation center, however, and the visits were not set up. Father did not push the issue further. After the relief-from-abuse order issued, father completed anger management counseling and a batterer's intervention program. Father testified that he learned a lot from these classes.

In the summer of 2012, mother moved with the children to Minnesota to be closer to her family. She did not notify father of the move. The restraining order was still in effect at this time. Mother then relocated to Wisconsin to be with her fiancé. Sometime after the restraining order expired, mother contacted father about a car-related issue. She told father where she was living and allowed father to speak with the children on the phone. Phone contact occurred between February 2013 and May 2013, and it went well. In May 2013, the parties discussed a divorce. Mother became upset when father did not send her divorce papers, and she cut off father's communication with the children.

In June 2013, father filed for divorce. The court issued a temporary order in January 2014 that found resumption of father's phone contact to be in the children's best interests. The court ordered mother not to interfere with these calls. Mother did interfere, however, and coached the children to say mean things to father. Father could hear someone in the background of his calls telling the children what to say. When no one was coaching the children, the calls went fairly well. Many times, no one would answer the phone at father's appointed call time.

The court found that due to mother's interference, father's relationship with the children had not advanced since it issued its temporary order in January 2014. The court explained that it had experienced mother's interfering behavior first-hand. Mother was testifying at the divorce hearing by phone, and she asked to have the children testify. The court clearly told her no. Mother nonetheless put the children on the phone to tell father and the court that they did not want to have contact with father. This was directly contrary to what the court told mother to do, and mother had directly inserted the young children into the adult proceedings in a traumatizing manner. It also appeared that mother kept the children in the room where she was testifying for at least part of her testimony. The court found that mother was unwilling to shield the children from adult issues.

The court also found that mother had been the children's primary caregiver throughout their lives. She provided most of their care. She tended to the home, cooked for the family, and did the housework. The court found that, overall, mother had done a good job raising the children. Father was often away from the house for days at a time, often without explanation. The court reiterated that father abused mother during the marriage. It did not credit mother's testimony that father also physically abused the children. It did find, however, that father abused mother in the children's presence, which was traumatizing to the children and which constituted "indirect" abuse of the children. The court found that the children needed counseling as a result of this abuse.

Father asserted that he had learned a lot from his counseling, and that he presented no risk to mother or the children. The court found that father had made improvements in managing his anger and his controlling behaviors, but there nonetheless remained reason for concern. During his testimony, father minimized his abuse during the marriage. He also downplayed how his abuse affected the children. The court also found that mother retained significant animosity

toward father. Given father's actions during the marriage, the court found her animosity understandable. Nonetheless, for the children's sake, she needed to learn coping skills that would result in her shielding the children from the adult issues and not continuing to place them in the middle of those issues.

Despite father's actions during the marriage, the court found there were many times when father had positive interactions with the children, particularly when he was not in mother's presence. Father took the children on various outings, played games with them, and took them to his work to see the animals. The children enjoyed these times with father. The phone calls also went well with the children when mother did not interfere with the calls. Given these "happy times," the court found reason to believe that over time and with counseling, the children could again have safe contact with father. This would require, however, that mother not interfere with the relationship.

Father had no personal contact with the children since December 2011. Since that date, mother had handled everything concerning the children. Father had not contributed to the children's living expenses, except for a three-month period following the issuance of the restraining order.

Based on these and other findings, the court evaluated the statutory best-interest factors set forth in 15 V.S.A. § 665. It found that six of the factors favored mother while one favored father. As reflected above, the court found that mother had been the children's primary caretaker and that she had the better ability to provide the children with love, affection, and guidance. The court remained concerned about father's temperament. The court recognized that father might argue that it was mother's fault that he did not have a closer relationship with the children. While it was true that mother had interfered with his relationship with the children, the court found that the primary reason that father had been out of the children's lives for the prior two years was his history of abuse, which culminated in mother obtaining a final relief-from-abuse order. The statutory factor favoring father was his greater ability to foster a positive relationship and frequent and continuing contact with the other parent. The court ultimately concluded that the factors predominated in mother's favor, and that it was in the children's best interests that mother be awarded primary legal and physical rights and responsibilities.

The court considered parent-child contact. It concluded that father was entitled to limited and supervised parent-child contact, which needed to proceed through a therapeutic process to ensure that the children were not further traumatized. The court found that the children should first engage in therapy to address their past trauma and prepare them for contact with father. Because neither party presented testimony from a therapist, the court did not know how long this might take. It estimated, however, that based on the trauma that the children had suffered and the lack of contact with father, the children would need six months of therapy before supervised parent-child contact could occur. The court directed father to select the children's counselor in an area close to the children's home and ordered father to pay for the counseling. After six months of therapy, the court indicated that father would be entitled to supervised parent-child contact at a supervised visitation center in Wisconsin near the children's home. The visitation would occur during school vacations and last at least one hour every other day during vacations. The court ordered mother to cooperate with the children's therapy and not to continue to interfere with father's relationship with the children. Father appealed from the court's order.

Father first argues that the court gave too much weight to the statutory best-interest factors that favored mother. Father maintains that mother should not benefit from her actions in alienating the children from him. Father asserts that he was excluded from the children's lives, not because of the relief-from-abuse order, but because mother was unwilling to allow contact, she left Vermont without arranging for contact, and she did not inform father where she and the children were living. Father also complains that the court erred in assuming that he continued to engage in abusive behavior.

As we have often repeated, the family court has "broad discretion in custody matters." Begins v. Begins, 168 Vt. 298, 301 (1998). Its "paramount consideration in awarding parental rights and responsibilities is the best interests of the child." Id. "Given its unique position to assess the credibility of witnesses and weigh the evidence, we will not set aside the court's findings if supported by the evidence, nor its conclusions if supported by the findings." Id.

Father essentially challenges the court's assessment of the weight of the evidence, a matter reserved exclusively for the trial court. As set forth above, the court recognized mother's attempts to interfere with and undermine father's relationship with the children. It recounted how it had experienced mother's interfering and inappropriate actions first-hand. The court nonetheless concluded that it was primarily father's abuse of mother during the marriage and the issuance of a relief-from-abuse order—not mother's actions—that had kept father from the children. The court also found that the statutory best-interest factors predominated in mother's favor, including the fact that she had been the children's primary care giver, a factor entitled to "great weight." Hazlett v. Toomin, 2011 VT 73, ¶ 13, 190 Vt. 563 (mem.) (citing Nickerson v. Nickerson, 158 Vt. 85, 89 (1992)). The court did not find that father continued to engage in abusive behavior, as father suggests. Rather, it expressed concern that if the children were to live with father, the children might again be subjected to "indirect" abuse given father's history. The court identified reasonable grounds for its concern, including father's abuse history and the minimization of his abusive behavior during the marriage to mother and the effect it had on the children.

This case is not like Begins, cited by father. In Begins, we reversed a trial court's award of custody to a father where the award was based on the father's "willful alienation of a child from the other parent" and the resulting hostility that the children felt toward the mother. 168 Vt. at 302. In that case, the trial court awarded custody to the father even though the mother had been the children's primary caretaker before the separation, the father had been the principal cause of the boys' estrangement from mother, and every other consideration rendered the mother the more suitable custodian. Id. at 303. In this case, by contrast, mother has been the children's primary caregiver throughout their lives, mother was not the primary source of the children's estrangement from father, and with one exception, all of the statutory factors favored an award of custody to mother. Begins does not control our decision here, and the court did not abuse its discretion in awarding sole legal and physical rights and responsibilities in the children to mother.

Father next argues that court erred in creating an "amorphous" parent-child contact schedule. He maintains that the schedule is unsupported by the evidence and dependent on an unnamed individual who is given authority to authorize an expansion or impose conditions for such contact. He complains about visitation being supervised and limited to Wisconsin. Father contends that the only evidence regarding the children's emotional state and mental health was

4

mother's testimony. He asserts that evidence from a mental health professional was required to provide "concrete evidence" on this issue.

We find no error. See Cleverly v. Cleverly, 151 Vt. 351, 355-56 (1989) (explaining that trial court's visitation schedule will stand unless court's "discretion was exercised upon unfounded considerations or to an extent clearly unreasonable upon the facts presented"). First, the court did not need expert testimony on the subject of the children's mental health and emotional state. The court could rely on mother's testimony and also "draw upon its own common sense and experience." Payrits v. Payrits, 171 Vt. 50, 53 (2000). It was reasonable for the court to conclude that counseling was necessary to address the trauma associated with father's abuse of mother and to prepare the children to see father again after a long absence. It was equally reasonable to conclude that the visitation should be supervised and should occur close to the children's home, where they felt comfortable and could be kept safe. As the court explained, the visits had a much better chance of being successful if they occurred where the children felt comfortable.

In reaching its decision, the court did not delegate responsibility for determining a parent-child contact to others as father asserts, nor did it delegate its authority to another person without providing any standards to guide that person's exercise of discretion. Cf. Engel v. Engel, 2012 VT 101, ¶¶ 17-18, 193 Vt. 19 (concluding that trial court erred by allowing children's pediatrician and therapist to make critical decisions regarding mother's contact with her children without court oversight, including deciding when mother would progress from supervised to unsupervised visitation, and by providing a "broad and vague" standard to govern exercise of treatment team's discretion). The court ordered that visitation occur after six months of therapy designed to address the effects of father's abuse of mother and the fact that the children had not seen father for a prolonged period of time. It ordered that the visitation occur at a supervised visitation center during school vacations for at least one hour every other day for the extent of time that father could remain in Wisconsin. The court was not obligated to ascertain at this juncture when father might move to unsupervised visitation. The court fulfilled its statutory obligation to determine a parent-child contact schedule, and we find no error.

Affirmed.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice

_____
John A. Dooley, Associate Justice

_____
Marilyn S. Skoglund, Associate Justice

5