*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

**ENTRY ORDER**

SUPREME COURT DOCKET NO. 2015-198

DECEMBER TERM, 2015

| | |
|---|---|
| Hartford Pizza, Inc. | } APPEALED FROM: |
| | } |
| | } Superior Court, Windsor Unit, |
| v. | } Civil Division |
| | } |
| | } |
| Alexandros Galanis | } DOCKET NO. 699-11-13 Wrcv |

Trial Judge: Theresa S. DiMauro

In the above-entitled cause, the Clerk will enter:

Defendant Alexandros Galanis, the purchaser of a restaurant in this commercial contract dispute, appeals from a superior court judgment in favor of the plaintiff seller, Hartford Pizza, Inc. Galanis contends that the court erred in: (1) concluding that the principal of Hartford Pizza, Inc. did not make material misrepresentations of fact to induce the sale such that Galanis would be relieved of his payment obligation under the parties' contract; and (2) awarding Rule 11 sanctions against Galanis's attorney. We affirm.

The material facts may be summarized as follows. Hartford Pizza, Inc. owned and operated a pizza restaurant business, known as Hartford Pizza, in the Town of Hartford. In 2012, the company's president, Christos Panagiotidis, decided to sell the business, and listed it with a commercial broker, James Pappas. In November or December 2012, Alexandros Galanis, who owned a restaurant in Connecticut, visited Hartford Pizza and expressed an interest in purchasing it. He returned in January 2013 with Pappas and made a written offer of $290,000, with a closing to occur on March 1, 2013. Thereafter, Galanis worked at Hartford Pizza almost every day for about a month-and-a-half to learn the business. Panagiotidis testified, and the court found, that Galanis was able to observe the amount of business conducted in the restaurant and become familiar with its practical components. Although Galanis testified that he was not given access to the restaurant's cash registers and books, the court found that he "had ample opportunity to assess the volume of business being conducted at the restaurant."

The parties continued to negotiate the sale and ultimately agreed to reduce the price to $240,000. They entered into a purchase and sale agreement on February 1, 2013. The agreement provided, in part, that "[a]ll accounts payable and other liabilities incurred by the Seller up to the date of closing shall be paid by the Seller, and the Seller shall indemnify and hold the Purchaser harmless against all such accounts payable and other liabilities . . . ." The sale closed on March 1, 2013. Under the agreement, $60,000 was paid in cash; $20,000 was credited from prior deposits; and the balance of $160,000 took the form of a promissory note given by Galanis to Hartford Pizza, Inc. which called for nine monthly payments of $2,651.66

from April to December 2013, a balloon payment of $22,651.66 in December 2013, and additional monthly payments thereafter until May 2018. The note contained an acceleration clause in the event that Galanis failed to make the required payments, as well as a provision entitling the seller to attorney's fees incurred in any suit to collect amounts due and owing. The note was secured by a chattel mortgage for the restaurant equipment transferred as part of the sale.

In a related transaction, Galanis leased the commercial real estate where the business was located for a period of five years, with an option to renew. The property was owned by Panagiotidis and his wife. The lease agreement was the subject of a separate lawsuit between the parties.

Galanis made the required payments until October 2013, when he decided to withhold further payments and sent an explanatory letter, through his attorney, to Panagiotidis. The letter alleged that, in the course of the sales transaction, Panagiotidis had intentionally misrepresented the restaurant's weekly receipts in order to artificially inflate the price and had misrepresented that all taxes had been paid. The letter demanded that Panagiotidis execute an amendment to the agreement reducing the amount owed on the note from $160,000 to $60,000, among other provisions. The letter also stated that, until the matter was resolved, Galanis would make all monthly payments into an escrow account, "to be distributed upon order of the court."

Panagiotidis and Hartford Pizza Inc. sent a responsive letter, through counsel, denying the allegations and rejecting the proposed amendment. In November 2013, Hartford Pizza, Inc. filed a complaint against Galanis for breach of the promissory note, invoked the acceleration clause, and demanded payment of the remaining balance of $144,090.04 together with attorney's fees and costs. Galanis answered and counterclaimed for breach of contract and intentional and negligent misrepresentation, alleging that Panagiotidis and Hartford Pizza, Inc. had misrepresented that the gross weekly revenue of the restaurant was $13,000 rather than its actual weekly revenue of $8,500 to $9,500, and had also failed to disclose a number of obligations that remained unpaid at the time of the closing, including state and federal taxes secured by liens, a water and sewer bill, and amounts owing to an electrical contractor.

A court trial was held over the course of two days in February and March 2015, and the court issued a written decision in May 2015. The court found that the sole basis of the claim that Panagiotidis had misrepresented the restaurant's weekly revenues was a form document that Galanis claimed to have received from James Pappas, the broker utilized by Hartford Pizza, Inc., which contained handwritten notes purporting to itemize the restaurant's revenue and expenses.[1] Galanis acknowledged that he did not know who had written the information on the form, and Panagiotidis testified that he had never seen the document, that the notes were not in his handwriting, that his weekly revenue was generally between $6,000 and $8,000 per week, and that he had not represented the revenue to be higher.

---

[1] The document was introduced as evidence. It is a form headed by the name of the broker, James Pappas, and contains 22 lines with pre-printed categories and room for the information to be entered with respect to the category. One of the lines is for the category "Gross Weekly." The entry on the line is "$13,000 (NO DELIVERY)".

The court found that Panagiotidis testified credibly that he had not made the alleged misrepresentation, and that no other credible evidence supported the claim. On the contrary, the court found that Galanis was given "ample opportunity to assess the volume of business being conducted at the restaurant," and that his claim of being denied access to financial information was not credible. The court thus found no credible evidence to support the claim of misrepresentation.

The court also rejected the claim that Hartford Pizza, Inc. had breached the agreement by falsely representing that no outstanding obligations remained at the time of the closing. The court noted that the agreement appeared to contemplate the possibility of such obligations by requiring the seller to indemnify the purchaser for "all such accounts payable and other liabilities." The court found that most of the alleged outstanding obligations were obligations of Hartford Pizza, Inc., for which Galanis, as purchaser of the restaurant business, was not in any event liable. The court also credited Panagiotidis's testimony that he was unaware of the outstanding obligations and further found that any possible breach was immaterial, as Panagiotidis had taken steps to ensure that all of the obligations were paid.

Finally, as explained more fully below, the court ruled in favor of plaintiff's request for sanctions pursuant to V.R.C.P. 11, ordering Galanis's attorney to pay plaintiff the $1,625 attorney's fees it incurred in the filing of the motion. This appeal followed.

Galanis contends the court erred in rejecting the claim for breach of contract based on the alleged misrepresentations concerning the restaurant's weekly revenues and the existence of outstanding obligations.[2] Our review of the trial court's factual findings is "deferential." Clayton v. Clayton Investments, Inc., 2007 VT 38A, ¶ 9, 182 Vt. 541 (mem.). "We review the factual findings of a trial court in the light most favorable to the prevailing party. We will not disturb the trial court's factual findings unless they are clearly erroneous, even if the record contains inconsistencies or substantial evidence to the contrary." Adams v. Adams, 2005 VT 4, ¶ 10, 177 Vt. 448 (citations omitted). Such deference is based, in part, on the trial court's "unique position to assess the credibility of witnesses and weigh the evidence." Begins v. Begins, 168 Vt. 298, 301 (1998). The trial court's legal conclusions are reviewed de novo. Clayton, 2007 VT 38A, ¶ 9.

---

[2] In his answer, Galanis claimed that the contract was entered into "pursuant [to] misrepresentations" and, therefore, the note is "null and void." In his counterclaims, defendant alleged that sellers intentionally, or recklessly, or negligently made material misrepresentations upon which defendant relied and sought damages for these actions. Galanis appears to have relied upon his asserted affirmative defense, rather than his counterclaims, at trial and in this Court. The trial court noted that the asserted misrepresentations would not constitute a breach of contract, except where the contract required specific actions, but might give rise to a right to rescind, which defendant had not plead or sought. The court also noted that defendant offered no evidence to support the damage request for his counterclaims.

Applying these settled standards, we find no error. The trial court found to be credible the testimony of plaintiff's president[3] that he had not misrepresented the restaurant's weekly revenues, and further found from the evidence as a whole that Galanis was afforded ample opportunity to assess the restaurant's business, including its volume.[4] The record evidence, summarized earlier, supports these findings. The court also credited the testimony of Hartford's president that he was unaware of the outstanding bills, and further found that—even if Panagiotidis had been aware of their existence—Galanis had adduced no credible evidence that he was harmed by the unpaid invoices, which Panagiotidis had endeavored to pay after he learned of them. And there is no dispute that the outstanding tax lien were on Hartford Pizza, Inc.; the trial court found that there was no evidence that Galanis or his business was affected as a result of this lien. The evidence also supports these findings. We thus discern no error and no basis to disturb the judgment.

Galanis additionally contests the trial court's award of Rule 11 sanctions against his lawyer. The background is as follows. In his October 2013 letter, Galanis's attorney stated, as noted earlier, that Galanis's monthly payments under the promissory note would be paid into an escrow account "to be distributed upon order of the court." In his answer to plaintiff's complaint, Galanis, through counsel, reiterated that Galanis had deposited all sums due under the promisory note "into his attorney's trust account pending an order from th[e] court." At a subsequent hearing in January 2014, in connection with Panagiotidis's eviction action under the lease agreement between the parties, Galanis's attorney argued that Galanis should be permitted to continue to conduct the business so that he would have the revenue to pay into the escrow account pending a final resolution of the promissory-note case. Counsel specifically stated that, "until there is a hearing on the merits, everything should be held in escrow," that Galanis was "prepared to continue to operate his business and continue to timely escrow all monies until the court orders what to do with them," and that $41,358.37 of Galanis's money was currently in the account.

During the first day of the trial in this matter, on February 11, 2015, Galanis testified that he had stopped making payments into the escrow account, and Galanis's attorney subsequently confirmed that Galanis had not made any payments since June 2014, and further that all of the funds in the account had been returned to Galanis at his request. At no time prior to the trial in this matter, however, did Galanis's attorney inform plaintiff's attorney or the court that counsel's prior representations regarding the escrow account were no longer accurate.

---

[3] Galanis testified that the document which contained the representation of the gross income of the restaurant was presented to him by James Pappas, the broker retained by plaintiff. Nevertheless, Galanis has not claimed that plaintiff could be responsible for the representation solely based on the action of Mr. Pappas, and instead has focused on the action of Mr. Panagiotidis. Mr. Pappas was not a witness, and there was no specific testimony about him. Both in defendant's presentations to the trial court and this Court, and in the decision of the trial court, defendant and the court have conflated plaintiff, Hartford Pizza, Inc., and its president, Christos Panagiotidis.

[4] Galanis did not testify that he relied upon the document such that he would not have purchased the restaurant without the represented level of gross income.

Plaintiff subsequently moved for sanctions under V.R.C.P. 11(b)(3)[5] based on Galanis's attorney's failure to advise the court that, contrary to his earlier representations, Galanis was no longer making deposits to the escrow account. Galanis's attorney opposed the motion, asserting that she had made no false statements to the court, and was therefore under no obligation to correct any representation that became inaccurate; that she was obligated to release the funds when requested to so by her client absent any court order to the contrary; and that she had no "obligation to reveal such attorney-client communication to the court or to opposing counsel."

The trial court ruled that Galanis's attorney violated Rule 11 by failing to correct her prior statements to the court and opposing counsel:

> . . . that payments were being made and would continue to be made, leading counsel and the court to believe that allowing [Galanis] to remain in possession of the business would enable him to continue to make these payments, thus maintaining the status quo and providing security to [Hartford Pizza] in the event that [Hartford Pizza] prevailed on its claims.

As a sanction, the court ordered Galanis's attorney to pay the attorney's fees incurred in bringing the motion, which totaled $1,625.

Galanis asserts that no violation occurred because no false statements were made; that when counsel represented the funds were being deposited, this was true; and that when she conceded the funds had been withdrawn and the payments had ceased, this was also true. The argument overlooks the court's finding, supported by the record, that counsel represented that payments would continue to be made to the escrow account until a resolution of the case on the merits, and that a failure to correct this statement and understanding by the trial court and opposing counsel constituted a patent misrepresentation by omission. See In re Wenk, 165 Vt. 562, 564 (1996) (mem.) (endorsing view that attorney's conduct violated Canon prohibiting dishonesty where attorney "knowingly engaged in misrepresentation by omission"). Galanis

---

[5] This provision states:

> By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other document, an attorney . . . is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: . . .

> (3) the allegations and other factual contentions have evidentiary support, or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

V.R.C.P. 11(b)(3).

cites no persuasive reasoning or authority to support the claim that informing the court that payments had ceased would reveal a confidential attorney-client communication. Accordingly, we find no basis to disturb the order.

Affirmed.

BY THE COURT:

_____
John A. Dooley, Associate Justice

_____
Marilyn S. Skoglund, Associate Justice

_____
Beth Robinson, Associate Justice