Robinson, J.,
¶ 85. concurring. I concur, but with serious reservations that impel me to write separately. This case implicates serious federal and state constitutional concerns. I agree *152 that the trial court’s order, understood as a temporary measure, survives constitutional scrutiny, but that doesn’t mean that a longer term extension of the trial court’s order would likewise pass muster. I write separately to emphasize the constitutional parameters that will come into sharper relief as this case moves forward.
¶ 36. That the parent-child relationship is a constitutionally protected liberty interest is well established and uncontroversial. See Santosky v. Kramer, 455 U.S. 745, 753 (1982) (“The fundamental liberty interest of natural parents in the care, custody, and management of their child does not evaporate simply because they have not been model parents or have lost temporary custody of their child to the State.”). Reviewing a termination of parental rights pursuant to a New York statute, the United States Supreme Court explained that “until the State proves parental unfitness, the child and . . . parents share a vital interest in preventing erroneous termination of their natural relationship.” Id. at 760. Because terminating parental rights is tantamount to destroying a family, the Court ruled that due process requires that the state must prove parental unfitness by at least clear and convincing evidence before terminating parental rights. Id. at 770, 776.
¶ 37. This showing of “parental unfitness” necessarily focuses on the parent’s ability and disposition to parent his or her child. We have recognized that Santosky did not address the issue of what substantive showing is required to terminate parental rights, but merely “stands for the proposition that whatever measure of ‘unfitness’ a state requires to terminate parental rights must be shown by clear and convincing evidence.” In re D.C., 2012 VT 108, ¶ 22, 193 Vt. 101, 71 A.3d 1191. In In re D.C., we explained that the best-interests criteria contained in our statute relating to juvenile proceedings, 33 V.S.A. § 5114(a), “encompass both directly and indirectly the question of parental fitness.” In re D.C., 2012 VT 108, ¶ 22. The most important factor — and the one that most directly addresses parental fitness — is “whether the parent is likely to be able to resume parental duties within a reasonable period of time.” Id. (citing 33 V.S.A. § 5114(a)(3)). The other best-interests factors implicate the parent’s fitness “indirectly by requiring the court to examine the parent’s relationship with the child and what kind of role the parent has played and continues to play with respect to the child’s welfare.” Id. (citing 33 V.S.A. § 5114(a)(1), (2), (4)). We also noted that these factors generally *153 come into play only after a child-in-need-of-care-or-supervision (CHINS) merits finding. Id. ¶ 24. We concluded in In m D.C. that the CHINS statutory framework as a whole “is aimed at ensuring not only that children are protected from harm but also that the parent-child relationship is preserved unless circumstances, as demonstrated by clear and convincing evidence, require terminating that relationship because the parent is incapable of caring for his or her child.” Id. ¶ 26. In short, the question a court must answer is not simply whether, on the basis of clear and convincing evidence, terminating a parent’s rights would leave a child better off; before terminating a parent’s rights, a court must make findings by clear and convincing evidence that the parent in question is unwilling or unable to safely parent the child.
¶ 38. This Court has recognized that this requirement applies to divorce orders that effectively sever a parent-child relationship, as well as abuse and neglect cases in which the State seeks to formally terminate a parent’s rights. In Mullin v. Phelps, 162 Vt. 250, 647 A.2d 714 (1994), this Court considered a case in which the trial court essentially cut off a father’s contact with his two children after finding, by a preponderance of evidence, that the custodial father had sexually abused one of the children. The father denied abusing the child, and the trial court conditioned any contact between the father and his children on the father’s acknowledgment of the sexual abuse. Id. at 258, 647 A.2d at 718. This Court recognized that even though the trial court’s order left open the possibility of visits “for therapeutic purposes” between the father and his children at the behest of the children’s therapists, as a practical matter, the trial court’s order “effectively terminated” father’s rights. Id. at 263, 647 A.2d at 721. Relying on the United States Constitution and the Supreme Court’s analysis in Santosky, as well as on Chapter I, Article 10, of the Vermont Constitution, this Court concluded that a finding of sexual abuse by a preponderance of the evidence was insufficient, as a matter of due process, to terminate all parent-child contact between the father and his sons in the context of a divorce case. Id. Although this Court upheld the trial court’s finding of sexual abuse by a preponderance of the evidence, it held that “due process required the court either to find the existence of sexual abuse by clear and convincing evidence or to permit, at a minimum, continued contact between the father and the boys consistent with their safety.” Id. at 267, 647 A.2d at 724.
*154 ¶ 39. The dissenters in Mullin took issue with the Court’s requirement that the allegations of sexual abuse against the father be proven by clear and convincing evidence as opposed to by a preponderance, but nothing in either dissent suggests that the allegations of sexual abuse in that case need not be proven at all. See id. at 270, 647 A.2d at 726 (Allen, C.J., dissenting); id. at 276, 647 A.2d at 730 (Morse, J., dissenting). In analyzing whether due process required that the sexual abuse allegations against the father be proven by a preponderance of the evidence or by clear and convincing evidence, both the majority and Chief Justice Allen’s dissent applied the framework outlined by the United States Supreme Court in Mathews v. Eldridge, 424 U.S. 319 (1976). See Mullin, 162 Vt. at 265-67, 647 A.2d at 722-24; id. at 271-76, 647 A.2d at 726-29 (Allen, C.J., dissenting). Implicit in both opinions was that due process did not permit termination of the father’s relationship with his children absent proof of the allegations against him; the only point of contention was whether that proof would be by a preponderance of the evidence or by clear and convincing evidence. In arguing that a finding of sexual abuse by a preponderance of the evidence was sufficient to support the trial court’s order, Chief Justice Allen emphasized, “Proving sexual abuse by any standard poses a formidable task; proof by a preponderance of the evidence should not be equated with mere allegation.” Id. at 274, 647 A.2d at 728-29 (Allen, C.J., dissenting). The fact that the allegations of sexual abuse had been proven by a preponderance of the evidence was critical to Chief Justice Allen’s analysis, as it required the court to consider the children’s interests in personal safety and freedom from abuse as separate interests in the due process analysis. Id. at 273, 647 A.2d at 727 (Allen, C.J., dissenting).
¶ 40. The upshot of these decisions is that due process, pursuant to both the Vermont and United States Constitutions, does not permit the family division to effectively cut off a child’s relationship with a parent without a showing by clear and convincing evidence that the parent whose rights are terminated has engaged in some conduct, or has some characteristics, that render the parent unfit to parent the child. A finding, even by clear and convincing evidence, that effective termination of a parent-child relationship is in the child’s best interests pursuant to the best-interest factors in 15 V.S.A. § 665 is insufficient to support an order that essentially terminates a parent’s rights. See DeSantis *155 v. Pegues, 2011 VT 114, ¶ 31, 190 Vt. 457, 35 A.3d 152 (holding in context of interim custody order in divorce that “as a matter of due process, a court must find evidence of sexual abuse by clear and convincing evidence in order to terminate all contact between a parent and child” (citing Mullin, 162 Vt. at 263, 647 A.2d at 721)).
¶ 41. The trial court’s findings in this case make it clear that mother is not by any measure unfit to parent. The court emphasizes at the outset that “at no time has it ever been established by any credible evidence that [the child] was ever sexually abused” by his mother or her prior partner. The court finds that none of the allegations of abuse “have any foundation in fact, whatsoever.” Rather, the court concludes that the child’s beliefs concerning his mother have sprung “from nothing less than hysteria.” In fact, the court states, “[w]e have no doubt that but for the negativity his father and stepmother have marinated this child in since May of 2012, [the child’s] natural love and affection for his mother would likely return if he were reunited with her.” Although the trial court applies the clear and convincing evidence standard to the findings it makes, it has made no findings suggesting that mother is unfit, has neglected or abused the child, or has engaged in conduct that would warrant a termination of her parental rights.
¶ 42. Ironically, the only findings in this case relating to neglect or abuse implicate father, not mother. The trial court was “thoroughly convinced that father and stepmother are solely responsible for [the child’s] trauma and his utter estrangement from his mother.” The court finds that “father and stepmother broke all the basic rules of coparenting, and, in doing so, they obliterated this child’s relationship with his mother.” The trial court finds that a return to regular contact with mother would not be problematic on account of mother’s conduct — the risk that underlies the trial court’s order is that father and stepmother would be unable to refrain from further alienating behavior and that further contact with them, after resuming a relationship with his mother would “perpetuate [the child’s] exposure to their egregious behavior.” As this Court has previously observed, “a sustained course of conduct by one parent designed to interfere in the child’s relationship with the other casts serious doubt upon the fitness of the offending party to be the custodial parent.” Renaud v. Renaud, 168 Vt. 306, 309, 721 A.2d 463, 466 (1998).
*156 ¶ 43. Given the state and federal constitutional interests at stake, the trial court’s findings in this case could not support an order that effectively terminates mother’s parental contact with the child on a long-term basis.
¶ 44. I am willing to affirm the trial court’s order in this case as a temporary way station. The trial court in this case thoughtfully struggled with an impossible situation. The court constructed a plan designed to relieve the immediate pressure on the child, to put into place services for father and child, and to reinstate formal efforts to reestablish child’s relationship with his mother. The goal of the court’s order is to address the immediate psychological challenges the child is facing, establish a framework for rebuilding the relationship with his mother that has been destroyed by father and stepmother, and avoid the immediate disruption that would result from a change in physical rights and responsibilities. These goals are consistent with the court’s statutory mandate, as well as the constitutional imperatives identified above. See 15 V.S.A. § 650 (“The legislature finds and declares as public policy that after parents have separated or dissolved their civil marriage, it is in the best interests of their minor child to have the opportunity for maximum continuing physical and emotional contact with both parents, unless direct physical harm or significant emotional harm to the child or a parent is likely to result from such contact.”).
¶ 45. By all appearances, this wrenching situation is far from over, and the next chapter is close at hand. The trial court ordered that on or before August 16, 2016, unless the child has already begun routine visits with his mother as a result of the therapy ordered by the court, the child shall recommence treatment with a specified therapist with a goal towards reunification with his mother. Notwithstanding this order, and notwithstanding the trial court’s findings that father and stepmother have victimized this child by “marinating” him in negativity toward mother, at oral argument, father’s counsel continued to question whether resumption of contact with mother will prove to be in the child’s best interests, and held out the possibility that evidence may yet emerge to prove the allegations decisively rejected by the trial court. Given father’s posture on appeal, and the trial court’s findings as to the risk that the child will not be able to withstand father’s and stepmother’s further alienating behavior, I’m deeply skeptical that the trial court’s hopes of reestablishing the child’s *157 relationship with his mother will bear fruit as long as the child lives with father and stepmother. Despite its hopes to the contrary, the trial court appears to share this skepticism. While the current order seeks to strike a balance between the child’s immediate need for stability in his present living situation and his countervailing need for a healthy relationship with his mother untainted by false allegations and imagined harms, it is not a long-term solution.
¶ 46. Indeed, this Court has previously held, as a matter of statutory interpretation and policy rather than constitutional imperative, that “[a] parent who willfully alienates a child from the other parent may not be awarded custody based on, that alienation." Begins v. Begins, 168 Vt. 298, 302, 721 A.2d 469, 472 (1998) (quotation omitted). In Begins, the trial court awarded the father physical rights and responsibilities of the parties’ sons on account of their estrangement from their mother. The trial court found that the most significant factor fueling that estrangement between mother and sons was “a constant poisoning of the relationship by the father.” Id. at 300, 721 A.2d at 471. Although the trial court acknowledged that the father did not deserve to be awarded custody of the children, it concluded that “he has effectively done so.” Id. This Court reversed, explaining:
Although obviously well intended, the court’s decision effectively condoned a parent’s willful alienation of a child from the other parent. Its ruling sends the unacceptable message that others might, with impunity, engage in similar misconduct. Left undisturbed, the court’s decision would nullify the principle that the best interests of the child are furthered through a healthy and loving relationship with both parents.
Id. at 302, 721 A.2d at 472.
¶ 47. For the above reasons, while I concur in the court’s decision concerning the specific, time-limited order before us, I want to state clearly that my concurrence does not signal that I believe that the Vermont and United States constitutions would tolerate an indefinite continuation of the effective suspension of mother’s parental rights reflected in the present order.