VERMONT SUPREME COURT
109 State Street
Montpelier VT 05609-0801
802-828-4774
www.vermontjudiciary.org



Case No.        23-AP-352

*Note: In the case title, an asterisk (\*) indicates an appellant and a double asterisk (\*\*) indicates a cross-appellant. Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

MAY TERM,   2024

Nathan Illsley\* v. Janeen Fickert

}  APPEALED FROM:
}  Superior Court, Rutland Unit,
}  Family Division
}  CASE NO. 21-DM-02225
    Trial Judge: David A. Barra

In the above-entitled cause, the Clerk will enter:

Father appeals the family division's final order granting sole legal and physical rights and responsibilities for the parties' three minor children to mother. We reverse and remand for the family division to reconsider its order consistent with the views expressed in this opinion.

The family division made the following findings in its order. The parties met on Facebook. Mother told father that she and her then-husband were having domestic issues and that her husband had pulled her hair. Father suggested mother come to Vermont to live with him, which she did. They were married in 2010, two days after mother's divorce from her previous husband was finalized.

The parties have three minor children together. Mother's daughter from a previous relationship, who has fetal alcohol syndrome, resided with the family during their marriage. Father did most of the housework and provided most of the income during the marriage. The parties were both involved in the children's medical appointments and schooling. Father had a strong, loving relationship with each child.

In the spring of 2021, mother started working at an amusement park in Lake George, New York. She began dressing more revealingly, spending long hours playing online games, and chatting with people father did not know. She took a trip to Illinois by herself, which she described as training for her job. The court did not find her explanation for the trip to be credible.

In September 2021, mother left the marital residence after calling the police and reporting that father had hurt her, pulled her hair, and broken her phone. Mother obtained a relief-from-

abuse (RFA) order which prevented father from returning home and having contact with the children. Father was also charged with domestic assault.[1]

The following morning, and unbeknownst to father, mother left Vermont with the children. She left the marital home in disarray but appeared to have packed a U-Haul trailer and moved her and the children's belongings out of the home almost immediately after obtaining the RFA order. She moved directly in with her boyfriend in his home in Illinois. The children began attending school in Illinois pursuant to arrangements mother had made prior to leaving Vermont. Neither party had family in Illinois and the children had not previously been to Illinois.

The court found that mother left Vermont as part of a long-planned move to be with her then-boyfriend, to whom she is now married. She had acted in a similar manner when she left her previous husband to be with father and had made similar abuse allegations against that husband as she did against father. The family division did not find mother's testimony about father's alleged assault to be credible. It credited father's testimony that mother had been communicating with someone else prior to the incident. She had thrown her phone, causing it to break, and called 911 from her watch. It also found credible father's claim that he had called his own father during the incident to come support him.

The children left friends and family in Vermont, including similarly aged cousins with whom they had developed good relationships. They also were close to father's mother, who had contact with them nearly every day when they lived in Vermont.

After mother left Vermont, father filed for divorce. He obtained an amendment to the RFA order allowing him to live in the marital residence and communicate with the children by phone and text message. During the winter, father spoke to the children during a power outage at the Illinois residence. There were no adults present and the children had nothing to eat. Mother and her current husband eventually returned home after several hours.

In July 2022, the children gave father a virtual tour of their Illinois residence which caused him to become concerned about how they were being treated. Food was kept behind padlocks, and the children had no access to food unless adults were present. Mother testified that she padlocked the food cabinets because the children were diabetic and were eating too much sugar. After father learned about the padlocks, mother took the children's phones and prevented them from contacting father for an extended period of time. This was contrary to the temporary parent-child contact order issued by the court in March 2022, which allowed father to have a daily phone call with the children.[2]

---

[1] The RFA order expired in October 2022. The domestic-assault charge against father was dismissed in April 2023.

[2] The March 2022 order also stated that if permitted by the criminal division, the children were to spend the summer with father in Vermont. However, in July 2022 the criminal division denied father's motion to amend the conditions of release to allow the children to have in-person contact with him.

2

In November 2022, the court issued an order in which it granted the divorce and divided the marital property.[3] It reserved final judgment on parental rights and responsibilities and parent-child contact because father's criminal charge remained pending, and his conditions of release prevented him from having in-person contact with the children. The court found in the divorce order that mother was not credible in her allegations of abuse by father against herself or the children.

The State dismissed the domestic-assault charge against father in April 2023. The children spent the summer of 2023 with father in Vermont, pursuant to the temporary custody order. The children were happy, well-cared-for, safe, and healthy. They did not display any of the food-related behavior that mother reported. Mother's older daughter also spent the summer with father by agreement of the parties. Father did not interfere with mother's contact with the children.

The children returned to Illinois in August 2023. The padlocks remained in place in mother's home, although she testified that they were not locked. Father had little contact with the children after they left Vermont. The children had school-required physicals and vaccinations while in mother's care, and the oldest child was involved in band at school.

The court considered the factors set forth in 15 V.S.A. § 665(b). It found that both parents were disposed to provide love, affection, and guidance to the children, but mother currently had the stronger bond and acted as the primary caregiver more of the time than father. Both parents were able to provide the children with adequate food, clothing, medical care, and other needs, and a safe environment. Mother had more difficulty meeting the children's dietary needs, as evidenced by the padlocks. Mother was presently more involved in the children's schooling and social development but both parents were able to meet their developmental needs. The court found that the children appeared to be adjusted to their surroundings and that disrupting the existing schedule would not be in their best interests. Mother had difficulty fostering a positive relationship between father and the children, but the converse was not true of father. Mother had been the more recent and consistent primary caregiver, and it would be detrimental to the children to change that relationship. The children had important relationships with friends and family in Vermont. The parents were not able to make joint decisions, but this was not relevant because they had not agreed to share custody. There was no evidence of abuse.

The court concluded that the first, third, fourth, and sixth § 665 factors weighed in favor of mother, while the second fifth and seventh favored father and therefore awarded mother sole legal and physical rights and responsibilities without further explanation. It ordered that the children spend summer vacation, as well as February and April and alternating Christmas vacations, with father. Father appealed the order to this Court.

Father argues that the family division's decision must be reversed because it failed to sufficiently consider mother's interference with his parent-child contact. He claims that the court's reliance on mother's status as the current primary caregiver essentially rewarded her for

_____

[3] The court made numerous findings about the parties' relationship with each other and the children in the divorce order. It repeated some of these findings in the final parental-rights-and-responsibilities order but omitted others, without explaining why. For example, it found in the divorce order that a return to Vermont would be beneficial for the children and that mother had ignored court orders relating to parent-child contact, but did not include these findings in the custody order.

relocating with the children under false pretenses. He argues that the court made no findings about the children's life in Illinois to support its conclusion that they were well-adjusted to their new surroundings, and that the record demonstrates otherwise.

"The trial court has broad discretion in a custody matter, and we must affirm unless the discretion is erroneously exercised, or was exercised upon unfounded considerations or to an extent clearly unreasonable in light of the evidence." Myott v. Myott, 149 Vt. 573, 578 (1988) (quotation omitted). "We will uphold factual findings if supported by credible evidence, and the court's conclusions will stand if the factual findings support them." Spaulding v. Butler, 172 Vt. 467, 475 (2001) (quotation omitted). "We will, however, reverse if the court's findings are not supported by the evidence, or if its conclusions are not supported by the findings." Wright v. Kemp, 2019 VT 11, ¶ 19, 209 Vt. 476 (quotation omitted).

We are unable to affirm the family court's award of parental rights and responsibilities to mother because its findings do not support its conclusions. The court found that father was a capable caregiver who had a strong bond with the children and had participated fully in their upbringing before mother left. The children also had strong ties to their family and community in Vermont. Mother secretly planned to move to Illinois with the children to be with her new boyfriend, and then falsely accused father of abuse to facilitate that move. Mother then prevented the children from contacting father when they were in Illinois. The court found that on more than one occasion, the children were left hungry while in mother's care, and that mother falsely accused father of kidnapping her oldest child. The court made virtually no findings regarding mother's relationship with the children or their life in Illinois other than its conclusory statement that mother currently had the stronger bond with them. These findings, viewed as a whole, would seem to favor an award of custody to father rather than mother.

This case is akin to Begins v. Begins, in which we reversed and remanded a decision awarding custody of the parties' children to the father. 168 Vt. 298, 303 (1998). In that case, the family court found that the mother would seem to be the better custodian because she was the primary caregiver and was more likely to foster a positive relationship with the father, but that the children's current hostility to the mother, which was encouraged by the father, precluded an award to her. We held that the court's findings "raise[d] serious doubts about [the father's] fitness to serve as the custodial parent," and essentially condoned the father's willful alienation of the children from the mother, thereby undermining "the principle that the best interests of the child are furthered through a healthy and loving relationship with both parents." Id. at 302. We concluded that "[a]n award so flagrantly at odds with the findings simply cannot be allowed to stand." Id. at 303.

Similarly, the court here appeared to conclude, in essence, that mother should be awarded custody because she was currently the primary caregiver and the children were now used to living in Illinois. However, the court's other findings make clear that these circumstances were the direct result of mother's unilateral decision to take the children to Illinois without permission, which was enabled by her false accusation that father had abused her. The court's decision essentially condones mother's attempt to become the de facto primary care provider by moving far away from father and interfering with the children's relationship with him. We have held that "[t]his kind of parental strategizing is inimical to the best interests of children." Nickerson v. Nickerson, 158 Vt. 85, 89-90 (1992) (explaining that "mere physical custody by one of two fit parents . . . should not in itself cause a former primary-care-provider to lose that status"); see also Renaud v. Renaud, 168 Vt. 306, 309 (1998) ("[A] child's best interests are plainly furthered by nurturing the child's relationship with both parents, and a sustained course of conduct by one

4

parent designed to interfere in the child's relationship with the other casts serious doubt upon the fitness of the offending party to be the custodial parent."). Further, the court's consideration of the best-interests factors in §665 was devoid of analysis beyond a mere counting of them in favor of one parent or the other. In making an award of parental rights and responsibilities, the factors in §665 must be weighed, not simply counted.

For these reasons, we reverse the court's final order on parental rights and responsibilities and parent-child contact and remand for reconsideration of those issues in light of this opinion as well as any change in circumstances that may have occurred while this matter was pending.

<u>Reversed and remanded for further proceedings consistent with this opinion</u>.

BY THE COURT:

_____
Harold E. Eaton, Jr., Associate Justice


_____
Karen R. Carroll, Associate Justice


_____
William D. Cohen, Associate Justice